UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANSELM CADDELL,                          Case No. 1:19-cv-91

            Plaintiff,
                                         Dlott, D.
      vs.                                Bowman, M.J.

JOYCE CAMPBELL, et al.,

            Defendants.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendants' motions to dismiss and motion for judgment on the pleadings. Also before the Court is Plaintiff's motion to strike Defendants' motion for judgment on the pleadings. The motions will be addressed in turn.

## I.     Background and Facts

The Plaintiff, Anselm Caddell, was stopped on February 23, 2017 by an Ohio State Highway Patrol Trooper for an alleged traffic violation. (Doc. 6, ¶¶ 25-26). Officers with the Fairfield Police Department responded to the scene as well. (Doc. 6, ¶ 27). Plaintiff alleges he was subsequently transported to the Butler County Jail, where he was held until his appearance before Judge Joyce Campbell five days later. (Doc. 6, ¶¶ 28-29).

According to the Amended Complaint, the Plaintiff was arrested on February 23, 2017 and was subsequently "detained by Defendant Jones in the Butler County Jail without bond or appearance before a judicial officer until Tuesday, February 28, 2017,

1

when he was finally transported to the [Fairfield Municipal Court] for arraignment before Defendant Campbell." (Doc. 6, ¶¶ 25, 29).

Plaintiff contends that his "five-day detention without appearance before a judicial officer resulted in a deprivation of his constitutional rights guaranteed under the Fourth, Sixth, Eighth and Fourteenth Amendments." (Doc. 6, ¶ 32). Plaintiff filed his Complaint on February 1, 2019, naming Judge Joyce Campbell, individually and in her official capacity as Presiding and Administrative Judge of the Fairfield Municipal Court, and the City of Fairfield as Defendants. (Doc. 1). An Amended Complaint was filed on February 18, 2019, adding Richard Jones, individually and in his official capacity as Sheriff of Butler County as a Defendant. (Doc. 6).

Defendants City of Fairfield and Joyce Campbell now move the Court to dismiss the Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Richard Jones also moves for judgment on the pleadings.  The motions will be addressed in turn.

## II.    Analysis

### A.  Standards of Review under Rules 12(b)(6) and 12(c)

Plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss on grounds of lack of subject matter jurisdiction.  *Nichols v. Muskingum College,* 318 F.3d 674, 677 (6th Cir. 2003); *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).  "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to

supplement the record by affidavits."  *Nichols*, 318 F.3d at 677 (citing *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986)).  "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in [his] complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols*, 318 F.3d at 677 (citing *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999)).

Furthermore, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678(citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

Additionally, a court may consider exhibits attached to the complaint and public records in deciding a motion to dismiss under certain circumstances. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)). Though, generally, a court may not consider matters outside of the pleadings when ruling on a 12(b)(6) motion without converting it into a Rule 56 motion for summary judgment, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## B. Defendants' motions are not well-taken at this time

### 1. *City of Fairfield and Fairfield Municipal Court (Doc. 8)*

The City of Fairfield argues that Plaintiff's claims against it fail for at least two reasons. First, the Amended Complaint does not provide any facts indicating that Fairfield Police Department officers were responsible for his alleged overdetention. Second, the City of Fairfield argues that is not responsible for the operations of the Fairfield Municipal Court as a matter of law.

More specifically, the City contends that the Plaintiff does not allege that the Fairfield Police officers were responsible for this five-day delay in any way, nor does the Amended Complaint allege that there was a delay in transporting the Plaintiff to the Jail. The Amended Complaint further states that the Plaintiff was "detained in the Butler County Jail by Defendant Jones," and that the Plaintiff was detained only at the Butler County Jail for the entire five-day period. (Doc. 6, ¶ 30). As such, the City contends that

there is no allegation that any City of Fairfield officer had a role in the allegedly delayed probable cause determination. The City's assertions are unavailing.

As noted above, Plaintiff contends that his "five-day detention without appearance before a judicial officer resulted in a deprivation of his constitutional rights guaranteed under the Fourth, Sixth, Eighth and Fourteenth Amendments." (Doc. # 6, ¶ 32). Notably, in *Gerstein v. Pugh,* 420 U.S. 103 (1975), we held that the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention. Thereafter, *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), established that "prompt" generally within 48 hours of the warrantless arrest; absent extraordinary circumstances, a longer delay violates the Fourth Amendment.

Plaintiff's complaint articulates two claims by which the City of Fairfield bears liability to Mr. Caddell and the putative class for the unconstitutional conduct at issue: (1) the unconstitutional policies and customs of its police force and, (2) the constitutional shortcomings of the Fairfield Municipal Court. Notably, at paragraph 21 of his Amended Complaint, Plaintiff asserts that:

> Defendants Fairfield and Jones employ policies or customs whereby the officers of their respective police forces transport certain individuals arrested without a warrant to the Butler County Jail. These Defendants know, or reasonably should know, that many of these individuals will be detained in excess of 48 hours without appearance before a judicial officer.

(Doc. 6).

5

Citing *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978), Plaintiff contends that a municipal government can be held liable under §1983 if a Plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a policy or custom of the municipality. To establish a municipal "policy," a plaintiff must prove that the municipal action was (1) taken with the requisite degree of culpability and (2) causally linked to the deprivation of a federal right. *Id.* In this regard, Plaintiff notes that the complaint specifically alleges that the City of Fairfield is a municipal corporation that operates the City of Fairfield Police Department, a police force empowered to arrest and detain individuals within its borders. (Doc. 6, ¶¶ 4, 18). Notably, individuals arrested by the Fairfield Police Department are to be arraigned before Judge Campbell in the Fairfield Municipal Court. (Doc. 6, ¶¶ 10, 11, 13)

Rather than operate a jail to hold individuals arrested within its borders, Plaintiff alleges it is the policy and custom of the City of Fairfield that those individuals be taken to the Butler County Jail. (Doc. 6, ¶ 18) The Butler County Jail is operated by Defendant Jones, whose policy and custom it is to hold individuals for more than 48 hours awaiting appearance before Defendant Campbell, who does not conduct arraignments often enough to satisfy the constitution. (Doc. 6, ¶¶ 14, 16, 17). Plaintiff further contends that Defendant Fairfield is aware of this policy and custom and is therefore aware, or reasonably should have been aware, that individuals, such as Mr. Caddell, transported to the Butler County Jail for detention pending appearance before Judge Campbell would necessarily be held in excess of 48 hours. (Doc. 6, ¶ 21). Specifically to Mr. Caddell, on the night in question the officers involved, including officers of the Fairfield Police Department, participated in his warrantless arrest and

detention in the Butler County Jail pursuant to the policies and customs of the City of Fairfield. (Doc. 6, ¶¶ 27, 28). The policies and customs of the City of Fairfield are therefore causally linked to the deprivation of the right to prompt appearance before a judicial officer and proximately caused injury to Mr. Caddell.

At this time, the undersigned finds that Plaintiff's complaint contains sufficient allegations that the policies and customs of the City of Fairfield are therefore causally linked to the deprivation of the right to prompt appearance before a judicial officer and proximately caused injury to Plaintiff.

 The City also argues that Plaintiff cannot show the City has sufficient authority over the Fairfield Municipal Court to impose liability on the City under the facts of this case.  Namely, the city contends that the Municipal Court is an arm of the State of Ohio and does not fall under the authority of the City of Fairfield.

Plaintiff, however, argues that the determination of whether the Fairfield Municipal Court is an arm of the City of Fairfield or the State of Ohio is fact-based matter inappropriate for determination on the pleadings. In *Alkire*, the Sixth Circuit set forth the balancing test to be applied when considering whether a court is an extension of the locality in which it sits or, rather, is an arm of the state. *Alkire,* 330 F.3d at 812. Among several factors to be weighed, *Alkire* notes that "whether the state would be legally liable for a judgment against the [court]" is the most important to consider. *Id.* The *Alkire* Court further stated:

> Other factors relevant to the analysis of the sovereign immunity issue might include, but are not limited to, the following. First, courts have looked to the status of the entity under state law. This inquiry might include whether state statutes, including any enabling legislation, or case law characterize the entity as an arm of the state. Second, courts have

7

reviewed the degree of autonomy that the entity has or, put another way, the amount of control the state wields over the entity. Relatedly, it might be useful to look to whether the agency can sue or be sued in its own right or hold property in its own name. Whether the entity is immune from state taxation may also shed light on whether it is considered an arm of the State. Finally, the inquiry might include an assessment of whether the entity is concerned with state-wide or local issues.

*Id at 812-813.*

Plaintiff argues that resolution of this issue is simply premature at this juncture because no facts have yet been developed in the record as required by Sixth Circuit precedent. The undersigned agrees. In light of the foregoing, the undersigned finds that the City of Fairfield's motion to dismiss is not well-taken.

2. *Judge Joyce Campbell*

Judge Campbell also seeks dismissal of Plaintiff's claims. Namely, Defendant Campbell argues that Plaintiff's claims against Judge Campbell fail for several reasons: First, the *Rooker-Feldman* doctrine precludes this Court from reviewing the claims against her. Second, as to Mr. Caddell's claims against Judge Campbell for her role in his underlying criminal case, Judge Campbell is entitled to absolute judicial immunity and Mr. Caddell's §1983 claim against the Judge fails as a matter of law. Finally, as to Mr. Caddell's claims against Judge Campbell for her alleged policymaking role, Judge Campbell is entitled to qualified and sovereign immunity. Defendant's assertions will be addressed in turn.

A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine states that district courts lack subject-matter jurisdiction over challenges to state court determinations. Notably, under 28 U.S.C. § 1257, final judgments of state courts are entitled to receive full faith and credit from

federal courts, and lower federal courts lack jurisdiction to review state court decisions. Instead, a review of state court determinations may be obtained only by filing a petition for writ of certiorari in the United States Supreme Court. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The doctrine applies to any case in which a plaintiff attempts to bring an impermissible attack on a state court judgment.

Here, Defendant contends that Mr. Caddell asks this federal Court to review Judge Campbell's underlying judicial decisions to determine whether they were constitutionally proper. This is an improper invocation of federal jurisdiction, and his complaint must therefore be dismissed. *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973).

Plaintiff, however, contends that *Rooker-Feldman* does not apply in this case because the conduct at issue is not judicial in nature  According to Plaintiff, the scope of the *Rooker-Feldman* doctrine was narrowed by the Supreme Court of the United States in 2005. *Pittman v. Cuyahoga County Dept. of Children and Family Services*, 241 Fed.Appx. 285, 286 (6th Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)). In *Exxon Mobil* the High Court stated:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments

*Exxon Mobil Corp.* 125 S. Ct. 1517, at 1520.

Thus, in view of *Exxon,* Plaintiff argues that for *Rooker-Feldman* to bar this Court's jurisdiction Plaintiff must be: (1) the losing party to a state court suit; (2) complaining of injury resulting from that state court judgment, and; (3) seeking review and rejection of that judgment by the federal district court. *Id.* Mr. Caddell is none of these things. Mr. Caddell was not the losing party in a state court suit, and, while this action does not involve the specifics of any suit, all claims against Mr. Caddell were dismissed. Mr. Caddell is also not complaining of injury resulting from a judgment. To the contrary, when he finally saw Judge Campbell, Mr. Caddell was set free from detention on his own recognizance. It therefore follows that Mr. Caddell is not seeking review of any judgment rendered by Judge Campbell. Mr. Caddell does, however, challenge Judge Campbell's policy or custom of not scheduling arraignments on Mondays and Fridays such that any individuals detained in the Butler County Jail will be held in excess of 48 hours in violation of the constitution. The institution and implementation of this custom or policy involves no "'judicial inquiry' into which Judge Campbell is called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist.'" *Feldman,* 103 S.Ct. at 1312. Mr. Caddell is also not asking this Court to determine that there was no probable cause for his arrest, nor is he asking this Court to reverse a conviction. Mr. Caddell instead is seeking compensatory damages and a declaratory judgment that Judge Campbell's policy and custom is unconstitutional. Thus, the *Rooker-Feldman* doctrine does not apply here.

*B. Judicial Immunity*

Judge Campbell also asserts that Plaintiff's claims against her fail as a matter of law because she is entitled to judicial immunity. The purpose for this protection "is primarily in order to protect judicial independence by insulating judges from vexatious actions by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 219 (1988). Determination of the circumstances in which immunity shall be applied turns upon whether the action complained of is action that is truly judicial in nature rather than ministerial or administrative. *Id*. A jurist seeking to invoke immunity for an action bears the burden to show that such immunity is justified for the function in question. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

Plaintiff argues that his case was not a matter in controversy before Judge Campbell at the time the constitutional harm occurred. Nor was the harm caused by any adjudicatory action taken by Judge Campbell. Rather, the judge enacted and has long pursued a general policy as an expression of her administrative or legislative authority over the court which impacted Mr. Caddell such that he spent five days in jail. As such, plaintiff contends that the application of judicial immunity in this case is also far less reasonable given that Mr. Caddell had no appeal available to him for this five-day detention.

Specifically, Plaintiff argues that it is Judge Campbell's general policy and custom of failing to conduct arraignments on Mondays and Fridays, or whenever they are otherwise constitutionally necessary, which results in individuals being held in the Butler County Jail for more than 48 hours. Indeed, Defendant Jones admits as much in his Answer, in which he states that he held Mr. Caddell in custody from Thursday until

"the first time that the Court was open," the following Tuesday. (Answer of Defendant Jones, Doc. 10 at ¶¶ 8, 10). Thus, Plaintiff contends that Judge Campbell's general policy, as in *Morrison v. Lipscomb, 8*77 F.2d 463 (6th Cir. 1989*)*, "did not alter the rights and liabilities of any [specific party] but, rather, instructed court personnel on how to process the [individuals arrested in her jurisdiction]." *Morrison* at 466. Plaintiff further notes that akin to *Morrison*, here, no direct appeal was available to Mr. Caddell or others similarly situated for their pre-arraignment detention, making the absence of judicial liability far less reasonable. *Id.* Further, again just as in *Morrison*, the action at issue does not require a judge to conduct it. In this regard, a court administrator could order that the scheduling of arraignments be delayed. *Id.*

In light of the foregoing, at this stage of the litigation and without the benefit of discovery, the undersigned finds that Defendant's motion to dismiss Plaintiff's § 1983 claims against her based on judicial immunity is not well-taken.

### C. Qualified Immunity

Judge Campbell also claims that she is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

A judge performing a discretionary, administrative function is entitled to qualified immunity from suit for civil damages unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Forrester v. White*, 484 U.S. 219 (1988). For a law to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As noted above, the Supreme Court has held the Fourth Amendment requires that an individual arrested without probable cause "may not be detained for over 48 hours without a neutral magistrate's review of that probable cause determination," *see Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *Riverside,* 500 U.S. at 56. Judge Campbell asserts that the constitutional requirements in *Riverside* and its predecessor, *Gerstein*, are placed upon the officials arresting and (once delivered to detaining authorities) officials detaining the arrested individual, not on local judicial officials.

Notably, in *Cherrington v. Skeeter,* the Sixth Circuit analyzed a claim related to an excessive detention following a warrantless arrest and recognized that "before a defendant may be held liable under section 1983, that defendant must first possess power by virtue of state law, then misuse that power in a way that violates federal constitutional rights." *Cherrington v. Skeeter*, 344 F.3d 631, 644-645 (6th Cir. 2003) (citing *Christian v. Belcher*, 888 F.2d 410, 414 (6th Cir. 1989)). The Court further recognized that courts "must look to state law to determine who is responsible for ensuring that a judicial determination of probable cause is made within 48 hours after

an arrest." *Id.* Applying Ohio law, the Court noted that, "where an arrest is made without a warrant, it generally falls to the 'arresting officer' to 'bring the arrested person without unnecessary delay before a court having jurisdiction of the offense.'" Id. (quoting Ohio Crim. R. 4(E)(2)).

In this regard, Judge Campbell further notes that other courts have likewise recognized that once a person arrested without a warrant is delivered to a detention facility, the requirement to bring that person before a magistrate for a probable cause determination clearly falls to detaining officials.

Under Ohio law, Judge Campbell argues that she does not have charge over the Butler County Jail (see R.C. 341.01) and was not detaining Mr. Caddell. See R.C. 341.01; see also Amended Complaint, Doc. 6., ¶25 (alleging Mr. Caddell was "detained by Defendant Jones in the Butler County Jail."). Accordingly, Defendant Campbell asserts that it does not fall to her to determine when a detainee needs to be brought before a neutral magistrate for a probable cause determination, nor would other office-holders of reasonable competence believe it does. As such, Campbell contends that Plaintiff cannot establish that at the time he was held at the Butler County Jail, it was clearly established and reasonably understood that Judge Campbell, who has no oversight or policymaking control over the arresting officers, detaining officers, or the Butler County Jail—had a legal obligation to ensure that Mr. Caddell was brought before a neutral magistrate within 48 hours of his arrest. Accordingly, Judge Campbell argues that she is qualifiedly immune from Mr. Caddell's claim that she is liable in her administrative capacity.

Plaintiff argues that Judge Campbell should have had knowledge of the constitutional 48-hour requirement. In this regard Plaintiff contends that in *Cherrington*, the Sixth Circuit noted that the "part-time court" scheme analyzed in *Alkire* would have violated the *Riverside* rule in cases involving arrests on Friday and Saturday. *Cherrington*, 344 F.3d at 644. The Sixth Circuit also elaborated, noting that *Riverside* ought to have alerted a "reasonable official" to the existence of an arrestee's Fourth Amendment right to a judicial determination of probable cause within 48 hours, irrespective of intervening weekends or other court holidays. *Id.* The notion of a "reasonable official" has been most often applied to peace officers. Plaintiff argues that one would assume that this is because it is a rare, if not unheard of, phenomenon that a court would have a policy or custom of failing to convene the requisite probable cause hearings in a timely manner in the wake of *Riverside*. Nevertheless, Plaintiff contends it cannot seriously be argued that a jurist, local, state, or federal, would not be considered a "reasonable official" charged with knowledge of the constitutional 48-hour requirement. Thus, Plaintiff argues that *Alkire* and *Cherrington* would direct that any such "reasonable official" responsible for the delay be liable for the constitutional harm caused by their individual failure.

Upon careful review, the undersigned finds that the consideration of qualified immunity is premature. *See Grose v. Caruso,* 284 F. Appx. 279, 283 (6th Cir.2008). Generally, qualified immunity is the basis for a summary judgment motion pursuant to Federal Rule of Civil Procedure 56, not a dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Id.* at 283 (citing *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *West v. Atkins,* 487 U.S.

42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), *Perez v. Oakland County,* 466 F.3d 416 (6th Cir.2006), and *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994)).

The undersigned recognizes that the rationale for the existence of qualified immunity is "[t]o avoid imposing needless discovery costs upon government officials," so determining whether the immunity applies "must be made at an early stage in the litigation." *Vaughn v. U.S. Small Bus. Admin.,* 65 F.3d 1322, 1326 (6th Cir.1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 816–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1987)). At the same time, the determination of qualified immunity "is usually dependent on the facts of the case, and, at the pleadings stage of a litigation, there is scant factual record available to the court." *Oshop v. Tenn. Dept. of Children's Services,* No. 3:09–cv–0063, 2009 WL 1651479(M.D.Tenn. June 10, 2009) (quoting *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001); *Hammett v. Okla. Dept. of Mental Health and Substance Abuse Serv.,* 153 F.3d 727, 727 (10th Cir.1998)).

Since plaintiffs are not required to anticipate a qualified immunity defense in their pleadings, *Vaughn,* 35 F.3d at 1326; *Oshop,* 2009 WL 1651479, at *7, and since at this stage of the litigation the exact contours of the right at issue-and thus the degree to which it is clearly established-are unclear, *Grose,* 248 F. Appx. at 283; *Oshop,* 2009 WL 1651479, at *7, the Sixth Circuit advises that qualified immunity should usually be determined pursuant to a summary judgment motion rather than a motion to dismiss. *See Oshop,* 2009 WL 1651479, at *7 ("Indeed, consideration of a qualified immunity defense is much more appropriate once the plaintiff has had the chance to

supplement his allegations with more detailed facts ascertained through discovery" (quotations omitted)); *McCombs v. Granville Exempted Village School Dist.,* No. 2:07–cv00495, 2009 WL 467066, at *7 (Feb. 24, 2009 S.D. Ohio) (holding that on a motion to dismiss "[i]t would be premature to grant dismissal based on qualified immunity" where the factual allegations of a plaintiff's complaint, though scarce, sufficiently alleged a violation of a constitutional right (citations omitted)).

Considering the factual allegations that Plaintiff has set forth, the undersigned finds it premature for Defendant Campbell to be granted qualified immunity. Such a decision would require the undersigned to assume facts that are not in evidence; namely, the policies and practice of Defendants relating to timely arraignments for individuals arrested without a warrant in the City of Fairfield. The undersigned recognizes that "where an arrest is made without a warrant, it **generally** falls to the 'arresting officer' to 'bring the arrested person without unnecessary delay before a court having jurisdiction of the offense.'" *See Cherrington* 344 F.3d at 644-645 (citations omitted) (emphasis added). However, without the benefit of discovery, the Court cannot determine whether this general rule was followed and/or what was in fact the custom or practice of Defendants relating to timely arraignments for individuals arrested without a warrant. If there is not a judge available on Fridays and Mondays then the "arresting officer" would not be able to bring the arrested person before the Court.

Accordingly, Judge Campbell's motion to dismiss based upon qualified immunity should be denied without prejudice to the affirmative defense being raised again at a later time.

*D. Sovereign Immunity*

Judge Campbell further argues that she is entitled to sovereign immunity for all claims pled against her in her official capacity. According to Defendant Campbell, Ohio Common Pleas Courts, and the judges of Common Pleas Courts sued in their official capacities, are political subdivisions of the state entitled to sovereign immunity. *Triplett v. Connor*, 109 Fed Appx. 94, *8 (6th Cir. 2004). Further, Defendant argues that judges sued in their official capacities are arms of the State who are not subject to suit under 42 U.S.C. § 1983. *Alkire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003); *Foster v. Walsh*, 864 F.2d 416, 418-19 (6th Cir. 1988).

Plaintiff argues that Judge Campbell is not an arm of the state as a matter of law when she is not acting in her individual capacity. 42 U.S.C. § 1983 empowers individuals to pursue redress for violations of their constitutional rights against every "person" who acts under color of state law. Plaintiff further contends that the Court does not need to reach the question of whether Judge Campbell is an arm of the state for purposes of sovereign immunity because Mr. Caddell has only sued her in her official capacity for the purpose of seeking declaratory relief. The Sixth Circuit has confirmed that "Section 1983 now implicitly recognizes that declaratory relief is available against judicial officers." *Ward v. City of Norwalk*, 640 F. App'x 462, 464 (6th Cir. 2016).

As noted above, Mr. Caddell's complaint presents two distinct claims against Judge Campbell. She is sued in her individual capacity for damages arising from her deliberate indifference to Mr. Caddell's clearly established constitutional rights. Mr. Caddell additionally sued Judge Campbell as a policy maker acting in her official

capacity as the presiding and administrative judge of the Fairfield Municipal Court. This claim, however, seeks only declaratory relief such that this Court will declare the policies and customs enacted and pursued by Judge Campbell to be in violation of the Constitution.

At this stage in the litigation, the undersigned finds that Defendant Campbell's motion to dismiss based on sovereign immunity is not well-taken.

In sum, the undersigned finds that Plaintiff has stated a cognizable claim for relief against Defendant Campbell in both her individual and official capacities and such claims may proceed at this time.

3. *Sheriff Richard Jones*

Also before the Court is a motion for judgment on the pleadings filed by Sheriff Jones. Jones argues that Plaintiff has not pleaded facts establishing that the alleged constitutional violation was caused by an official policy, custom or practice of the Butler County Sheriff. Sheriff Jones further contends that he is entitled to qualified immunity from Plaintiff's claims against him in his individual capacity.

Plaintiff has moved to strike Defendant's motion for judgment on the pleadings asserting that it has been filed prematurely in violation of Fed R. Civ. Pro. 12(c). Namely, Plaintiff contends that Defendant Jones has filed a Rule 12(c) motion for judgment on the pleadings before the pleadings have closed. Defendant Jones may well have the opportunity to seek judgment on the pleadings at some point. That opportunity, however, arises only after the pending motions to dismiss have been addressed, subsequent answers have been filed, and the pleadings will have closed. Notwithstanding the above, Plaintiff's motion to strike is not well-taken. In the interests

of justice and the Sixth Circuit's strong preference for trial on the merits, Plaintiff's motion to strike is **DENIED**. Defendant Jones' motion for judgment on the pleadings will be addressed below.

As noted above, Plaintiff Anselm Caddell was stopped by an Ohio State Highway Patrol Trooper on February 23, 2017 inside the City of Fairfield. (Doc. 6 at ¶¶ 25-26). He was subsequently arrested by either the Trooper or an Officer with the City of Fairfield Police Department. (Doc. 6, at ¶ 27). Plaintiff was transferred to the Butler County Jail following his arrest. (Id. at ¶ 29). Plaintiff was held at the Butler County Jail until February 28, 2017, which was the first day after the arrest in which the Fairfield Municipal Court ("FMC") convened such that the Court could review probable cause for the arrest. *Id.*

In light of the foregoing, Defendant Jones contends that Plaintiff has not pleaded facts establishing that the alleged constitutional violation was caused by an official policy, custom or practice of the Butler County Sheriff.  As to the individual claim against him, Defendant Jones argues that he is entitled to qualified immunity. Jones argues that Plaintiff has not alleged and cannot show that Sheriff Jones was personally aware of Plaintiff and/or involved with his detention, other than being the head of the office which operates the jail. Without evidence of personal involvement by Sheriff Jones, the individual claims against him must fail. Jones further contends that it is not well-established in the law that a jailer is constitutionally required to ensure that a person brought to the jail receives a prompt probable cause determined from the court for the jurisdiction in which the person was arrested. *See Leschorn v. Fitzgerald*, 6th Cir. No. 97-3421, 1998 U.S. App. LEXIS 2034 (finding it is the duty of the arresting

officer and court to ensure a prompt probable cause determination—not the jail in which the arrestee is physically held.).

Defendant's motion is not well-taken. As noted above, paragraph 21 of his Amended Complaint, Plaintiff asserts that:

> Defendants Fairfield and Jones employ policies or customs whereby the officers of their respective police forces transport certain individuals arrested without a warrant to the Butler County Jail. These Defendants know, or reasonably should know, that many of these individuals will be detained in excess of 48 hours without appearance before a judicial officer.

(Doc. 6)(emphasis added).

Plaintiff further alleges that the Butler County Jail is operated by Defendant Jones, whose policy and custom it is to hold individuals for more than 48 hours awaiting appearance before Defendant Campbell, who does not conduct arraignments often enough to satisfy the constitution. (Doc. 6, ¶¶ 14, 16, 17). At this time, the undersigned finds that Plaintiff's complaint contains sufficient allegations that the policies and customs of Sheriff Jones are therefore causally linked to the deprivation of the right to prompt appearance before a judicial officer and proximately caused injury to Plaintiff.

Moreover, as detailed above, the undersigned finds that the consideration of qualified immunity is premature. *See Grose v. Caruso,* 284 F. Appx. 279, 283 (6th Cir.2008). A determination of whether Defendant Jones is entitled to qualified immunity would require the court to evaluate facts that are not yet in evidence. Accordingly, Jones motion to dismiss based upon qualified immunity should be denied

without prejudice to the affirmative defense being raised again at a later time, after appropriate discovery has commenced.

**III. Conclusion**

Based on the foregoing, it is here **RECOMMENDED** that: 1) Defendants' motion to dismiss (Docs. 9, 12) be **DENIED**; 2) Defendant's motion for judgment on the pleadings (Doc. 16) be **DENIED**; and 3) Plaintiff's motion to strike (Doc. 19) is **DENIED**.


<u>*s/ Stephanie K. Bowman*</u>
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANSELM CADDELL,                                  Case No. 1:19-cv-91

        Plaintiff,

                                 Dlott, J.
   vs.                                                         Bowman, M.J.

JOYCE CAMPBELL, et al.,

        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).