# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANSELM CADDELL, et al.,

    Plaintiffs,

        v.

JOYCE CAMPBELL, et al.,

    Defendants.

Case No. 1:19-cv-91
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

This cause is technically before the Court on consideration of two separate Report and Recommendations (each an "R&R") that the Magistrate Judge filed in this matter. The Magistrate Judge issued the first Report and Recommendation on February 12, 2020 ("First R&R," Doc. 29). There, the Magistrate Judge recommended denying the Defendants' various motions to terminate this matter at the pleading stage. Defendants Joyce Campbell, Richard Jones, and the City of Fairfield each filed separate Objections (Docs. 32, 34, & 35) to that R&R.

But, while consideration of the First R&R was pending, the Magistrate Judge granted Plaintiff Anselm Caddell leave to file a Second Amended Complaint, technically mooting the First R&R and corresponding Objections. The Second Amended Complaint, however, merely added an additional plaintiff, and did not meaningfully change the underlying allegations. Thus, the Defendants essentially refiled the same motions that they had filed against the previous version of the Complaint.

On September 16, 2020, the Magistrate Judge, concluding that no new analysis was necessary, issued a short second Report and Recommendation ("Second R&R," Doc. 55). In the Second R&R, she adopted the reasoning of the First R&R as applied to the Second Amended Complaint. Because the Defendants' Objections to her analysis were already on file as to the First R&R, the Magistrate Judge also ordered no new objections be filed as to the Second R&R.

For the reasons discussed below, the Court finds that the First R&R (Doc. 29) and the Objections directed toward it (Docs. 32, 34, & 35) are **MOOT**. The Court considers those objections, though, in reviewing the Second R&R, which adopted the reasoning of the First R&R. The Court concludes that the Objections are not well taken. Accordingly, the Court **ADOPTS** the Second R&R (Doc. 55) and therefore **DENIES** the Defendants' Motions to Dismiss (Docs. 9, 12, & 50), Motions for Judgment on the Pleadings (Docs. 16, 51 & 53), and Objections to the First R&R (Docs. 32, 34, & 35), as well as Plaintiff's Motion to Strike (Doc. 19).

## FACTUAL BACKGROUND

### A. Caddell Is Arrested For A Traffic Violation And Detained For Five Days Before Seeing A Judicial Officer.

Many cases involve complex fact patterns hotly disputed by the parties. Not this one. On February 23, 2017, an Ohio State Highway Patrol Trooper[1], without a warrant, stopped Plaintiff Anselm Caddell for an alleged traffic violation. (Second Am. Compl., Doc. 45, #325). Fairfield Police Department personnel also responded to

---

[1] Caddell's Complaint does not name the trooper, but public records submitted by the City of Fairfield reveal that Daniel T. York arrested Caddell. (Fairfield Mun. Docket, Doc. 18-3, #118).

the scene. After a brief investigation, Caddell was arrested. Caddell alleges that "pursuant to the policies and customs of Defendant Fairfield," officers transported him to the Butler County Jail, where he remained without bond or appearance before a judicial officer until February 28, 2017. (*Id.*). That day, he appeared before the Fairfield Municipal Court, specifically Fairfield Municipal Judge Joyce Campbell. (*Id.*). Judge Campbell released Caddell on his own recognizance. (*Id.*). The five-day delay between arrest and arraignment provides the basis for Caddell's suit.

## B.    Caddell Sues Under § 1983.

Caddell filed a Complaint on February 1, 2019, followed shortly thereafter by an Amended Complaint on February 18, 2019. On July 23, 2020, Caddell submitted a Second Amended Complaint, which "add[ed] Caleb Lawson as a Plaintiff, but ma[de] no other substantive changes." (*Id.* at #320). In the Second Amended Complaint, he asserts a claim under 42 U.S.C. § 1983 that the five-day detention in the Butler County Jail violated his constitutional rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments. (*Id.* at #330). He also seeks class action treatment under Fed. R. Civ. P. 23, and defines the putative class as "individuals subject to a warrantless arrest and detained for more than 48 hours without appearance before a judicial officer pursuant to the policies or customs of the Defendants during the two years prior to the filing of the Class Action Complaint." (*Id.* at #328–30).

The Second Amended Complaint names Joyce Campbell (an active Fairfield Municipal Court Judge) and Richard Jones (the Butler County Sheriff) as defendants

in both their individual and official capacities. (*Id.* at #321–22). Caddell asserts that they "were aware, or should have been aware of the constitutional mandate that … individuals be provided an appearance before a judicial officer within 48 hours of arrest." (*Id.* at #324).

Regarding Campbell, Caddell claims that she is "the sole judicial officer and presiding judge" of the Fairfield Municipal Court, as well as that court's "policymaker." (*Id.* at #322). And Caddell asserts that "Campbell in her individual capacity fails to conduct arraignments such that some detained individuals are held in custody for more than 48 hours … in violation of their clearly established rights." (*Id.* at #323). Caddell also alleges that Campbell supervises the business of the court and exercises control over the "administration, docket, and calendar of the court." (*Id.* at #322). Caddell brings his claims against Campbell "in her individual capacity for purposes of damages, and in her official capacity for purposes of prospective relief." (*Id.*).

As for Jones, Caddell claims he is the "policymaker for the Butler County Sheriff's Office" and "operates the Butler County Jail," including "a patrol division empowered to arrest and detain individuals throughout Butler County." (*Id.*). Caddell claims that Jones is responsible for policies and customs that violate the right to a prompt initial appearance for individuals detained after a warrantless arrest. In particular, Caddell asserts that Jones maintains "policies or customs whereby the officers of [his] force[] transport certain individuals arrested without warrant to the Butler County Jail," notwithstanding that they "know, or reasonably should know,

that many of these individuals will be detained in excess of 48 hours without appearance before a judicial officer." (*Id.* at #324).

Caddell also sues the City of Fairfield under a municipal liability theory. (*Id.* at #321). As with Jones, Caddell asserts that the municipality likewise "employ[s] policies or customs" involving transporting arrestees to Butler County Jail that they "know, or reasonably should know" will result in individuals being detained for a constitutionally impermissible period. (*Id.* at #324).

## C. The Defendants All Move To Dismiss The Amended Complaint As A Matter Of Law.

After Caddell filed his First Amended Complaint (Doc. 6) (which was identical to the Second Amended Complaint as to each aspect described above), each Defendant filed a motion challenging that Complaint in its entirety.

The City of Fairfield moved to dismiss the case under Rule 12(b)(6) for failure to state a claim (Doc. 9). The City argued (1) that Caddell failed to allege any causal relationship between (a) the City, or any City policy or custom, and (b) Caddell's alleged over-detention, and (2) that, as a matter of law, the City is not responsible for how the Fairfield Municipal Court operates.

Judge Campbell moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Doc. 12). She pressed four arguments: (1) the *Rooker-Feldman* doctrine precludes Caddell's claims; (2) judicial immunity bars any claim predicated on her role in Caddell's underlying criminal case; (3) in terms of Caddell's claims directed at her alleged policymaking role, she is entitled to qualified immunity because the obligation to bring detainees before a judicial officer falls on the detaining

authority, which she was not alleged to be; and (4) sovereign immunity precludes claims brought against her in her administrative capacity because she acts as an arm of the state in that role.

For his part, Jones moved for judgment on the pleadings. (*See* Doc. 16). He claimed that the duty to secure a prompt probable cause determination falls solely on "the arresting officer," and that neither he nor anyone on his force played that role here, as his only alleged role was as jailor. Relatedly, he argued that Caddell failed to articulate a causal connection between any Butler County policy and his alleged over-detention. Finally, Jones argued that, even if a jailor may have some responsibility for securing a prompt appearance, that legal proposition is not "clearly established," and thus he is entitled to qualified immunity.

At some level, each Defendant disclaims responsibility for Caddell's over-detention on the grounds that such responsibility should lie elsewhere—(a) the City, which may have employed the arresting officer, says responsibility should lie with the County which acted as jailor; (b) the County Sheriff, who acted as jailor, says responsibility should lie either with the arresting officer or the Court (as the jailor delivered Caddell at the first available court date); and (c) the Court says responsibility should lie with the "detaining authority," which could presumably be a reference either to the arresting officer (who initiated the detention), or the jailor (who was maintaining the detention).

Caddell opposed these motions on the merits, and he also moved to strike (*see* Doc. 19) Jones's Motion for Judgment on the Pleadings on the ground that it was premature.

On February 12, 2020, the Magistrate Judge issued the First R&R. There, she recommended denying each Defendant's motion and allowing Caddell's case to proceed beyond the pleadings stage. (First R&R, Doc. 29, #191). As to the City of Fairfield's arguments, the First R&R concluded that the Amended Complaint "contains sufficient allegations that the policies and customs of the City of Fairfield are … causally linked" to the delay that allegedly led to Caddell's claimed deprivation of constitutional rights. (*Id.* at #176). As to the second, the R&R found that determining the relationship between the municipality and the municipal court would be premature "because no facts ha[d] yet been developed in the record as required by Sixth Circuit precedent." (*Id.* at #177). The Magistrate Judge thus recommended denying the City of Fairfield's Motion to Dismiss.

Turning to Campbell's Motion to Dismiss, the Magistrate Judge again disagreed that Caddell failed to state a claim. First, the Magistrate Judge determined that *Rooker-Feldman* did not apply to Caddell's claims because he is "not seeking review of any judgment rendered by Judge Campbell," but rather "is seeking compensatory damages and a declaratory judgment" based on Judge Campbell's allegedly unconstitutional "policy and custom" of not scheduling arraignments on Mondays or Fridays, thereby producing unconstitutionally long delays. (*Id.* at #179). For related reasons, the Magistrate Judge found that judicial immunity did not apply.

That is because Caddell was not challenging Campbell's conduct as a judge in his case, but rather the "general policy and custom of failing to conduct arraignments on Mondays and Fridays," which was a policy that Caddell alleges that Judge Campbell adopted in an administrative capacity, rather than in a judicial one. (*Id.* at #180). As for the qualified immunity defense, the Magistrate Judge determined that the issue of which actor, if any, bore responsibility for the over-detention was fact specific on the § 1983 claim here, and thus "consideration of qualified immunity is premature" pending further factual development. (*Id.* at #184–86). Finally, the Magistrate Judge rejected Campbell's sovereign immunity defense, at least as applied to Caddell's request for declaratory relief against Campbell in her official capacity, which sovereign immunity does not bar. (*Id.* at #187–88 (citing *Ward v. City of Norwalk*, 640 F. App'x 462, 464 (6th Cir. 2016))).

Last, the Magistrate Judge addressed Jones's Motion for Judgment on the Pleadings (Doc. 16), as well as Caddell's Motion to Strike (Doc. 19) that motion. Starting with the latter, the Magistrate Judge noted that motions for judgment on the pleadings typically come after "pending motions to dismiss have been addressed, subsequent answers have been field, and the pleadings will have closed," and thus determined that Jones's motion was potentially premature. (*Id.* at #188). At the same time, though, the Magistrate Judge stressed the Sixth Circuit's strong preference for resolution of issues on the merits, and thus declined to strike the motion. (*Id.* at #188–89). Even so, the Magistrate Judge found neither argument in Jones's Motion for Judgment on the Pleadings meritorious. As to the merits-based argument, the

Magistrate Judge found that Caddell had sufficiently pled that Sheriff Jones operated the Butler County Jail, and that the Jail had customs and policies that led to unconstitutionally long delays before arraignment, thereby plausibly establishing causation for pleading purposes. And, on the qualified immunity front, the R&R found the request for judgment premature, as it had with Judge Campbell's argument on this issue, saying that courts typically tackle qualified immunity issues on summary judgment after additional factual development. (*Id.* at #190). Thus, the Magistrate Judge denied Jones's Motion for Judgment on the Pleadings. All said, the First R&R recommended denying all of the Defendants' motions. The Defendants all filed timely Objections to the First R&R (Docs. 32, 34, & 35).

After the Objections had been fully briefed, Caddell sought, and the Magistrate Judge granted, leave to file a Second Amended Complaint (Doc. 45), which Caddell did on July 23, 2020. That Complaint added Caleb Lawson as an additional named plaintiff and class representative, but did not change the theories of liability. In response, Campbell moved to dismiss the Second Amended Complaint (Doc. 50) and incorporated all arguments she previously made in the motions addressed by the First R&R and the related objections. Soon after, Jones filed a Motion for Judgment on the Pleadings (Doc. 51), which similarly incorporated his arguments concerning the First R&R. Likewise, the City of Fairfield filed a Motion for Judgment on the Pleadings (Doc. 53) that incorporated all arguments that it previously made concerning the First R&R.

Plaintiffs Caddell and Lawson responded to those motions (Docs. 52, 54). They renewed the arguments that Caddell had made on the first go around to rebut the Defendants' motions, and applied them to the allegations contained in filings relating to the Second Amended Complaint. In short, all parties filed motions that preserved their respective arguments relating to the First Amended Complaint, which the First R&R addressed, and applied those arguments to the Second Amended Complaint.

In the Second R&R, the Magistrate Judge noted that the First R&R became "technically moot" after Plaintiffs filed a Second Amended Complaint. (Second R&R, Doc. 55, #388). As such, the Magistrate Judge denied all Objections to the First R&R as moot. But, because the parties presented the "same issues" and "same arguments" in response to the Second Amended Complaint as they had with regard to the First Amended Complaint, Magistrate Judge Bowman concluded that "the analysis in the [First] R&R applies to the newly filed motions directed to the second amended complaint." (*Id.*). Thus, the Second R&R recommended that, for the same reasons articulated in the First R&R, the Court: (1) deny Campbell's Motion to Dismiss (Doc. 50); (2) deny Jones's Motion For Judgment On The Pleadings (Doc. 51); and (3) deny City of Fairfield's Motion For Judgment On The Pleadings (Doc. 53). (Second R&R, Doc. 55, #389). In addition, the Second R&R ordered that no objections be filed, meaning that the Second R&R is ripe for review based on the previously filed objections to the First R&R.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

At the motion to dismiss stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [the nonmovant] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that assessment, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is true, however, only as to factual allegations. The Court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 546–47.

11

**LAW AND ANALYSIS**

**A.    The Second R&R Correctly Dismissed The Defendants' Motions Regarding The First Amended Complaint As Moot.**

To start, the Court agrees with the Magistrate Judge's determination that Plaintiffs' filing of a Second Amended Complaint moots the First R&R, as well as the motions that the First R&R addressed and Defendants' related Objections. *See Riley v. Fritz*, No. 1:08-cv-828, 2009 WL 261257, at *2 (W.D. Mich. Feb. 4, 2009) ("[T]he R&R here became moot when the original complaint was superseded."); *Buckeye Ranch, Inc. v. Disability Rights Ohio*, No. 2:18-cv-906, 2018 WL 6831531, at *2 (S.D. Ohio Dec. 27, 2018) (holding that "filing of the Second Amended Complaint moots the pending Motion to Dismiss" and directing defendant to "challenge the Second Amended Complaint by filing a new motion to dismiss or renewing its previous motion"); *GCA Servs. Grp., Inc. v. Parcou, LLC*, No. 2:16-cv-02251, 2016 WL 9307505, at *1 (W.D. Tenn. June 6, 2016) (dismissing a motion to strike as moot because "[i]t is well-settled that an amended pleading supersedes an original pleading and renders the original pleading a nullity"); *Cooper v. Montgomery County*, No. 3:13-cv-272, 2015 WL 7181637, at *1 (S.D. Ohio Aug. 28, 2015) (finding a motion for judgment on the pleadings moot "[g]iven that Plaintiff has filed a Second Amended Complaint"). In sum, all motions and objections here filed prior to the Second Amended Complaint, along with the First R&R itself, are, as a technical matter, moot.

That said, parties are free to renew their previous arguments in motions addressing a Second Amended Complaint. *Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007) ("Defendants' motions to dismiss the

12

original complaint and the first amended complaint are moot. The Court will, however, consider the arguments asserted in these pleadings to be incorporated by reference into the motions to dismiss the second amended complaint."). And it appears the parties here have done just that.

Accordingly, the Court adopts the Second R&R's recommendation that this Court find the motions relating to the First Amended Complaint and the First R&R itself all to be moot. Thus, the Court **DISMISSES AS MOOT**: (1) Defendants the City of Fairfield and Joyce Campbell's Motions to Dismiss (Docs. 9, 12); (2) Defendant Richard Jones's Motion for Judgment on the Pleadings (Doc. 16); (3) Plaintiff Anselm Caddell's Motion to Strike (Doc. 19); and (4) the Defendants' Objections to the First R&R (Docs. 32, 34, & 35). But the Court will nonetheless consider the Defendants' Objections, as applied to the Second R&R, which adopts the reasoning of the First R&R.

**B.** **The Defendants' Instant Motions Opposing Plaintiffs' Second Amended Complaint Advance The Same Arguments Regarding The First Amended Complaint And The First R&R.**

Each of the three Defendants sought dismissal of all claims against them as a matter of law. The Magistrate Judge recommends denying each of their motions. And each Defendant separately objects to the Magistrate Judge's recommendation in that regard. Thus, the Court considers each Defendant separately below, but reaches the same conclusion as to all—their Objections are not well taken at this stage of the litigation.

1. **Caddell Brings Constitutional Claims Against The Defendants Under § 1983.**

Before turning to the Defendants' specific Objections, the Court wants to further explain the alleged constitutional right underlying Caddell's claims. As noted above, his claims are predicated on the Defendants' alleged failure to provide him a prompt initial appearance before a judge after a warrantless arrest. In that regard, the Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), announces something of a bright-line rule: a pretrial detainee must receive a probable cause determination within 48 hours; otherwise the government has likely violated the Fourth Amendment. *See Cherrington v. Skeeter*, 344 F.3d 631, 643 (6th Cir. 2003) ("While a delay of over 48 hours is not *per se* unlawful, the Government bears the burden in such cases to 'demonstrate the existence of a bona fide emergency or other extraordinary circumstance' that led to the delayed probable cause determination." (quoting *Riverside*, 500 U.S. at 56)).

Here, Caddell's five-day detention exceeded *Riverside*'s permissible holding period. And, just like the plaintiff there, Caddell advances a § 1983 claim challenging the manner in which the Defendants "provide[] probable cause determinations to persons arrested without a warrant." *Riverside*, 500 U.S. at 47.

Still, *Riverside* involved a *county's* liability for its *own* detention policies. This suit, by contrast, attempts to hold a municipal court judge, a county sheriff, and a municipality liable. And there is some confusion as to whose customs or policies caused Caddell's alleged over-detention, in turn creating questions as to which

government officer or entity, if any, bears potential liability for the alleged Fourth Amendment violation.

In answering that question, it is important to recall that "§ 1983 prohibits actions 'under color of state law' which deprive an individual of a right secured by the U.S. Constitution or a federal statute." *Cherrington*, 344 F.3d at 644. That in turn means that § 1983 suits succeed when defendants "*possess* power by virtue of state law" and then "*misuse* that power in a way that violates constitutional rights." *Id.* So, to determine who bears potential liability in the context here, federal courts "must look to state law to determine who is responsible for ensuring that a judicial determination of probable cause is made within 48 hours of arrest." *Id.* In short, identifying the proper defendant or defendants for Caddell's § 1983 claim requires looking to Ohio law to determine which Defendant or Defendants, if any, potentially bore responsibility for failing to provide Caddell a timely probable cause hearing.

While *Cherrington* is helpful in many ways, it did not definitively resolve that question of responsibility, especially not in the factual context here. Rather, in *Cherrington*, the Sixth Circuit found only that, under Ohio law, it "generally falls to the 'arresting officer' to 'bring the arrested person without unnecessary delay before a court having jurisdiction of the offense.'" *Id.* (quoting Ohio Crim. R. 4(E)(2)). Because there the "record [was] almost entirely silent" about "the roles played by … Defendants or other law enforcement officials" regarding the plaintiff's unconstitutional pretrial detention, the Sixth Circuit found that it "lack[ed] the information necessary to resolve the issue of causation." *Id.* at 644–45.

What *Cherrington*'s language strongly suggests, then, is that courts should look to the record to determine whether "the delay [in the] … probable cause determination was attributable to the actions (or inaction)" of one or more of the named defendants. *Id.* at 645. And, in deciding that issue, it is not clear that *direct* involvement in the arrest or detention is necessary to support such attribution. Instead, the Sixth Circuit left open the possibility that government officials or a municipality could be liable for a *Riverside* violation under § 1983 if the record reveals that those parties adopted or implemented *customs or policies* that caused an undue delay in judicial determinations. *Id.* at 645, 648. Using this framework, then, the Court addresses each Defendant's arguments in turn.

### 2. The Court Denies Defendant Joyce Campbell's Motion To Dismiss.

Judge Campbell's Objection hits a bit of a snag right at the outset, as the Court must first determine which arguments in that Objection are preserved for review. In her Objection, Judge Campbell says that she "challenges the Report and Recommendation's rejection of all her raised defenses," but admits that "she only provides specific additional clarification of the errors within the Magistrate Judge's qualified immunity determination." (Campbell's Obj., Doc. 34, #223). It is not clear that this suffices to raise objections to anything beyond the qualified immunity determination. Presumably, the generic reference to "challenges" includes the arguments she made in her motion to dismiss before the Magistrate Judge. But, allowing a party "to incorporate [her] initial motions … into [her] objections [would] essentially defeat[] the purpose of the referral in the first instance." *Cline v. City of*

*Mansfield*, 745 F. Supp. 2d 773, 787–88 (N.D. Ohio 2010), *amended in part* (Jan. 27, 2011), *aff'd sub nom. Cline v. Myers*, 495 F. App'x 578 (6th Cir. 2012). That is, parties are expected to identify "specific objections" to a magistrate judge's opinion, rather than simply rehash the same arguments that led to the magistrate judge's opinion in the first instance, without even referring to that opinion. *See id.* at 787.

While it is not clear that Campbell's Objection meets that test here as to any arguments other than qualified immunity, the Court will nonetheless consider each of the arguments for dismissal she asserted below. These include whether: (1) "the *Rooker-Feldman* doctrine precludes this Court from reviewing [Caddell's] claims against [Campbell]; (2) Campbell "is entitled to absolute judicial immunity" regarding "her role in [Caddell's] underlying criminal case"; (3) Campbell should receive qualified immunity; and (4) Campbell "is entitled to qualified and sovereign immunity" for claims involving "her alleged policymaking role." (First R&R, Doc. 29, #177). Given the nature of the claims asserted, none of those defenses work at this stage of the litigation.

### a. *Campbell's* Rooker-Feldman *Argument Is Misplaced.*

Under the *Rooker-Feldman* doctrine, federal courts, aside from the Supreme Court, cannot revisit a state-court ruling that "constitute[s] a judicial decision." *Patmon v. Mich. Supreme Court*, 224 F.3d 504, 509 (6th Cir. 2000). The doctrine applies when "the losing party in state court file[s] suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and

seek[s] review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).

The Magistrate Judge correctly rejected Campbell's *Rooker-Feldman* argument because Caddell "is not seeking review of any judgment rendered by Judge Campbell." (First R&R, Doc. 29, #179). Caddell is not challenging any decision Judge Campbell rendered in Caddell's criminal proceeding, but rather he takes issue with the "customs and policies" that Judge Campbell enacted in her role as an administrator. That is a problem for Judge Campbell's *Rooker-Feldman* argument because "the doctrine applies when plaintiffs challenge the state court decision, not state law generally." *Hancock v. Miller*, No. 20-5422, 2021 WL 1157843, at *4 (6th Cir. Mar. 26, 2021). As Caddell does not appear to be challenging Campbell's judgment in his case, but rather an official "custom and policy" that led to an overly long detention, not just in his case, but in others as well, Campbell's *Rooker-Feldman* argument fails at this juncture. Should it turn out that no such "custom and policy" exists, of course, that would be problematic for Caddell (and any class he hopes to represent).

### b. *Campbell Cannot Assert Judicial Immunity Under the Facts Alleged.*

Campbell's judicial immunity defense fails for similar reasons. Judicial officers enjoy broad and absolute immunity from suits seeking money damages based on their conduct as judges in a given case. *HLV, LLC v. Van Buren County*, 775 F. App'x 204, 210 (6th Cir. 2019). Moreover, "[j]udicial immunity shields judicial officers not simply from a judgment awarding damages—but also from the suit itself. And the doctrine

is expansive, applying even when a party alleges that the judge acted maliciously or violated its constitutional rights." *Id.* (citations omitted).

There are three exceptions to judicial immunity, however, that may be relevant here. First, judicial immunity does not apply to official capacity claims that seek prospective relief. *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Second, "a judge may be held liable for 'nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'" *HLV*, 775 F. App'x at 211 (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). Examples of such nonjudicial actions include "administrative" actions, such as "instruct[ing] court personnel on how to process the petitions made to court." *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989). Such actions differ from judicial actions, which typically "alter the rights and liabilities of … parties." *Id.* Third, a judge can be liable for undertaking judicial acts "in the complete absence of all jurisdiction." *HLV*, 776 F. App'x at 210 (quoting *Mireles*, 502 U.S. at 12).

Campbell claims absolute judicial immunity because Caddell "is challenging Judge Campbell's conduct as the judge presiding over his specific case." (Campbell's Mot. to Dismiss, Doc. 12, #53). And Campbell further argues that none of the exceptions described above apply. Taking the noted exceptions in reverse order, Campbell is correct that the Fairfield Municipal Court has jurisdiction over any misdemeanor committed within the limits of its territory, and thus the absence-of-all-jurisdiction exception cannot apply.

But that still leaves the judicial capacity exception. Campbell claims that her "actions, or inactions as they may be viewed here, were judicial acts." (*Id.* at #55).

Rephrased, she argues that the "decision to hold a hearing or not hold a hearing within a given amount of time in a given case is a judicial act." (*Id.*). In short, Campbell contends that her relationship to Caddell's detention and lack of hearing was "quintessentially judicial in nature." (*Id.*).

The Court does not agree, at least based on Caddell's Second Amended Complaint. In *Morrison*, the Sixth Circuit specified that judicial immunity does not apply when plaintiffs challenge how cases are processed. 877 F.2d at 466. And here, as the Magistrate Judge noted, Caddell is not complaining about a discretionary scheduling decision in his case, but rather about Campbell's "general policy and custom of failing to conduct arraignments on Mondays and Fridays, or whenever they are constitutionally necessary." (First R&R, Doc. 29, #180). That sounds like a case-processing rule, not a discretionary decision.

To rebut that finding, Campbell cites a district court case where the judge found the defendant "entitled to judicial immunity for her actions that are deemed judicial in nature, specifically, the December 5, 2006 hearing and the alleged delay in not setting the December 11, 2006 hearing within 72 hours of the filing of the motions." *S.L. ex rel K.L. v. Peirce Twp. Bd. of Trs.*, No. 1:07cv986, 2009 WL 818436, at *5 (S.D. Ohio Mar. 26, 2009). But there, the plaintiffs had specifically disclaimed the 72-hour delay in setting a hearing as a basis for their claim against the judge. The plaintiffs conceded that, in the factual setting there, the judge's conduct in setting the later hearing stemmed from her role as presiding judge in the then-pending matter. *Id.* at *4 ("Plaintiffs' counsel asserted that any claims against Judge

Wyler are limited to the actions that occurred between the arrest of S.L. and his December 5, 2006 appearance since Judge Wyler is entitled to judicial immunity for the actions that took place thereafter."). Given that admission, the Court in *Peirce* did not need to worry about drawing a precise line between judicial and non-judicial functions. But, even in reaching the result it did, the Court noted that judicial immunity does not extend to actions undertaken in a judge's "administrative role." *Id*. at *5.

Here, Caddell asserts that he is not challenging an individual scheduling decision in his case, but rather an alleged official court "policy or custom" relating to scheduling arraignments. Such a challenge may fall outside the scope of judicial immunity. For example, if the Municipal Court has adopted an official policy or custom of not holding arraignments on Mondays or Fridays, and of not making judicial officers available for arraignments outside scheduled court times, that would mean that any person arrested on a Thursday evening would necessarily be held nearly five days before appearing before a judge. That delay would not reflect any particular judge's decision in any particular case, but rather would arise from a scheduling policy that creates an extended period of time during which no judicial authority is available. A claim challenging that scheduling policy thus would fall outside judicial immunity.

On the other hand, if further development shows that Caddell (or the new Plaintiff, Caleb Lawson) is instead challenging the way in which Campbell conducted *a particular case*, the result would be different. For example, if there is no official

policy or custom precluding a judicial officer from conducting a probable cause hearing outside normally scheduled court hours, but rather that is merely a discretionary decision left to the judge in a given case, then judicial immunity may well be warranted. As currently alleged, though, the Court finds that Campbell has not established that judicial immunity bars Caddell's § 1983 claim.

### c. *Campbell Cannot Establish Qualified Immunity Under the Alleged Facts at the Dismissal Stage.*

Qualified immunity protects government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Campbell asserts that qualified immunity shields her from civil liability resulting from Caddell's unconstitutionally delayed detention, as it was not clearly established that a judge, as opposed to the arresting or detaining officer, has a duty to ensure a timely hearing. The Magistrate Judge disagreed with Campbell, finding that granting qualified immunity at the dismissal stage would be premature because the facts in evidence did not clearly show what customs or practices resulted in Caddell not receiving a prompt hearing. (First R&R, Doc. 29, #186). In other words, the Magistrate Judge found that, absent further discovery, resolving who is responsible for timely arraignments under Ohio law, at least in Campbell's jurisdiction, would require "assum[ing] facts that are not in evidence." (*Id.*). So the Magistrate Judge dismissed Campbell's motion to dismiss on qualified immunity grounds, but did so without prejudice to permit Campbell to raise that defense later in the case. (*Id.*).

22

In *Cherrington*, as explained above, the Sixth Circuit addressed how to resolve qualified immunity questions in a similar § 1983 case, where an alleged "part-time court scheme" violated *Riverside*'s 48-hour rule. 344 F.3d at 644. There, the court declined to grant qualified immunity to the individual defendants because "the record [did] not disclose all of the pertinent details of the specific roles played by [the individual defendants] in [plaintiff's] detention and eventual appearance before a magistrate." *Id.* To be sure, *Cherrington* observes that "[u]nder Ohio law, where an arrest is made without a warrant, it generally falls to the 'arresting officer' to 'bring the arrested person without unnecessary delay before a court.'" *Id.* (quoting Ohio Crim. R. 4(E)(2)). Even so, *Cherrington* did not create a bright-line rule that *only* the arresting officer could be liable for *Riverside* violations. Instead, the Sixth Circuit focused on "the issue of causation," i.e., whether the *Riverside* violation "was attributable to the actions (or inaction) of one or both of the named Defendants." *Id.* at 645.

Here, Caddell argues that Judge Campbell knew or should have known about the 48-hour rule and also that the Fairfield Municipal Court's scheduling customs and policies governing judicial determinations of probable cause would violate that rule. In response to Campbell's assertion of qualified immunity, the Magistrate Judge found the record silent, or at least underdeveloped, regarding the evidence necessary for granting qualified immunity to Campbell, i.e., the policies and practices "relating to timely arraignments for individuals arrested without a warrant" in her jurisdiction. (First R&R, Doc. 29, #186). When making that conclusion, the

Magistrate Judge stressed the general (but not inviolable) rule that qualified immunity is better decided at the summary judgment stage than on a motion to dismiss. (*Id.* at #185).

Campbell's Objection presses two arguments in response. First, she claims that no clearly established law showed that a municipal court judge would know that the policies creating a *Riverside* violation were unlawful. (Campbell's Obj., Doc. 34, #228). Second, she argues that *Riverside*, despite the 48-hour rule, still gives state courts latitude "to proscribe a particular schedule, format, or forum" for making probable cause determinations. (*Id.* at #231). In other words, she argues that (1) it is not clearly established law that a municipal court judge could be responsible for Caddell's detention, and (2) Caddell's five-day detention might not have been a *Riverside* violation at all.

To start, both the Magistrate Judge and Campbell make correct observations about the standard for granting qualified immunity on a motion to dismiss. Campbell rightly notes that there is no bar against granting qualified immunity at the dismissal stage. But that does not disprove the Magistrate Judge's point that qualified immunity is "usually dependent on the facts of the case" and, at the motion to dismiss stage, often "there is scant factual record available to the court." (First R&R, Doc. 29, #185 (quoting *Oshop v. Tenn. Dept. of Children's Servs.*, No. 3:09-cv-0063, 2009 WL 1651479, at *7 (M.D. Tenn. June 10, 2019))). Still, courts may consider at the dismissal stage whether, as a matter of law, qualified immunity bars suit under the facts pled by the plaintiff. *Peatross v. City of Memphis*, 818 F.3d 233, 239 (6th Cir.

2016). Addressing that question requires a "two-step inquiry: first, viewing the facts in the light most favorable to the plaintiff, 'do the facts alleged show that the officer's conduct violated a constitutional right?' Second, was 'the right clearly established' at the time of the violation?" *Id.* at 240 (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (internal citation omitted)).

The Court agrees with the Magistrate Judge's determination that Campbell is not entitled to qualified immunity, at least right now. To start, the Court asks if the facts in Caddell's operative Complaint show that Campbell's conduct violated his Fourth Amendment right to a prompt probable cause determination. Here, Caddell has alleged that Campbell exercised her administrative authority over scheduling procedures for probable cause hearings in a manner ensuring extended, unconstitutional delays. So the only question remaining on that front is whether a five-day delay would constitute a Fourth Amendment violation under *Riverside*.

To be sure, the Supreme Court left some wiggle room in *Riverside* for the States to craft their own procedures that create "prompt determinations of probable cause." *Riverside*, 500 U.S. at 53. In other words, *Riverside* permits some state-level discretion for crafting pretrial procedures. And the Sixth Circuit interpreted that flexibility as meaning "[w]hile a delay of over 48 hours is not *per se* unlawful, the Government bears the burden in such cases to 'demonstrate the existence of a bona fide emergency or other extraordinary circumstance' that led to the delated probable cause determination." *Cherrington*, 344 F.3d at 643 (quoting *Riverside*, 500 U.S. at 57). But here Campbell has not asserted (at least not yet) that an emergency or

extraordinary circumstance justified Caddell's five-day wait for a probable cause hearing, so the Court rejects her argument that the facts in Caddell's Second Amended Complaint do not allege that Fairfield Municipal Court's actions violated Caddell's Fourth Amendment Right under *Riverside*.

Next, the Court considers whether Caddell identifies a clearly established right. Campbell asserts that, at minimum, the law is unclear on whether a judicial officer can be responsible for customs or policies resulting in a *Riverside* violation. (Campbell's Obj., Doc. 34, #232). And it is true that arresting officers, and not magistrate judges, usually carry responsibility to bring an arrestee before a court without unnecessary delay. *Cherrington*, 344 F.3d at 655. But *Cherrington* does not create a bright line for which government officials can be sued for *Riverside* violation; instead, courts look to whether the defendant's action or inaction resulted in a delayed probable cause determination. *Id.*

Here, Caddell alleges that Campbell bears responsibility for adopting a court scheduling policy that necessarily results in unconstitutionally delayed hearings. Indeed, his operative Complaint states that Campbell, as sole judicial officer in her court, is responsible for the docket and calendar of her court, among other things. And Caddell asserts that, under that authority, Campbell fails to convene court such that timely probable cause hearings can be made. So, under the causation analysis in *Cherrington*, it seems that Caddell has alleged enough to show Caddell's actions *could have* violated his clearly established right for a government official not to impede a prompt probable cause hearing. Indeed, the Sixth Circuit found that if the record

shows that a court runs, "as a matter of course or custom," on a "part-time" basis, then the court "very likely [ran] afoul of the forty-eight hour time limit established in *Riverside*." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

All said, the Court finds that *Alkire* clearly established that policies resulting in a part-time court can create *Riverside* violations. And *Cherrington* permits suits against any state official whose actions cause a *Riverside* violation. Rephrased, a "reasonable official," including a municipal judge, should know that the Fourth Amendment creates a right to a probable cause hearing within 48 hours (at least as a general matter), and that a policy that creates a "part-time court" to handle such hearings would likely violate that right. *Cherrington*, 344 F.3d at 644; *Alkire*, 330 F.3d at 815. Given those cases, the Court agrees with the Magistrate Judge's determination that Campbell's qualified immunity defense falls short, at least absent more facts about Campbell's responsibility for the alleged courthouse policy and details about the alleged customs and policies that gave rise to asserted *Riverside* violations for arrestees adjudicated by the Fairfield Municipal Court.

> **d.** ***Because Caddell Only Seeks Prospective Relief Against Campbell in Her Official Capacity, Sovereign Immunity Does Not Apply.***

Caddell's suit makes clear that he is suing Campbell "in her official capacity for purposes of prospective relief." (Second Am. Compl., Doc. 45, #322). In response, Campbell claims that judges are "entitled to sovereign immunity for all claims pled against them in their official capacities," (Campbell's Mot. to Dismiss, Doc. 12, #61), which would mean Caddell's official capacity claims fall short. The Magistrate Judge

sided with Caddell, finding that sovereign immunity does not protect judges for official capacity claims made "for the purpose of seeking declaratory relief." (First R&R, Doc. 29, #187–88). In her Objection, Campbell provided no additional reasoning regarding sovereign immunity and incorporated her arguments in the Motion to Dismiss by reference. (Campbell's Obj., Doc. #34, #226–27).

Upon review, the Court agrees with the Magistrate Judge's conclusion that the Sixth Circuit does not permit sovereign immunity to preclude official capacity claims seeking prospective relief, such as declaratory relief, against judges. *See Ward*, 640 F. App'x at 467 ("Moreover, sovereign immunity does not bar plaintiffs' declaratory judgment claim against Judge Ridge and Clerk Boss in their official capacities."). So the Court rejects Campbell's sovereign immunity defense.

In sum, Campbell fails to show why Caddell has failed to state a claim such that dismissal under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) is warranted. Thus the Court **ADOPTS** the Magistrate Judge's findings on Caddell's claims against Campbell and **DENIES** Campbell's Motion to Dismiss. That being said, it may well be the case that, with further record development, in particular as to the official customs and policies surrounding scheduling probable cause hearings, judgment as a matter of law will be warranted.

The Court notes that there is one more issue that no party raised regarding the claim against Judge Campbell, yet bears consideration as this case moves forward. As noted, Caddell is suing Judge Campbell in her individual capacity, but is doing so based solely on official customs and policies that she adopted. Often, the

custom or policy language in § 1983 actions is used as a basis for imposing what *Monell* refers to as municipal liability—i.e., making an entity liable based on acts performed by some agent or employee of that entity (who was merely following the custom or policy in undertaking the constitutional violation). That form of liability typically arises in the context of official-capacity claims. But Caddell faces a problem in advancing an official-capacity claim against Judge Campbell, other than for prospective declaratory relief. As described below, the Fairfield Municipal Court is an arm of the State, and thus an official-capacity claim against Judge Campbell (an employee of the State) for money damages would be an impermissible claim against the State.

Based on the Court's initial research, though, it appears that parties may be able to pursue individual capacity claims against persons based on customs or policies that person implemented. *See Loy v. Sexton*, 132 F. App'x 624, 628 (6th Cir. 2005) ("A supervisory official can be liable under § 1983 for formulating or tolerating unconstitutional policies."); *see also Khan v. Barela*, 808 F. App'x 602, 610–11 (10th Cir. 2020) ("[B]ecause Khan seeks only damages, his claim may proceed against Barela only in an individual capacity. … A § 1983 plaintiff can establish … liability by showing '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'") (quoting *Dodds v. Richardson*, 614 F.3d 1185,

1199 (10th Cir. 2010)). So the parties should be mindful of that issue as this case proceeds.

### 2. The Court Denies Defendant Richard Jones's Motion For Judgment On The Pleadings.

Like Judge Campbell, Sheriff Jones also objects to the Magistrate Judge's determination that Caddell's claims can proceed against him. According to Jones, Caddell cannot plead a *Riverside* claim against him, as the obligation under *Riverside* runs to the arresting officer, not the jailor. (Jones's Obj., Doc. 32, #202–206). Accordingly, even if Jones has "customs or policies" in place that led to over-detention, Jones contends that he cannot be liable under § 1983 for those policies, especially when someone not on his force was the arresting officer. Separately, he argues that even if a jailor *could* bear legal liability in that setting, it was not *clearly established* that a jailor could, and thus qualified immunity is warranted. (*Id.* at #209–213). The Court disagrees.

To support his contention that jailors cannot be liable for *Riverside* violations, Jones directs the Court to *Leschorn v. Fitzgerald*, 142 F.3d 434 (table), 1998 WL 69036 (6th Cir. 1998). There, officers arrested the plaintiff without a warrant and detained him at the Harrison County Jail. *Id.* at *1. Due to overcrowding, Harrison County officials requested the Carroll County Jail to house the plaintiff. Carroll County agreed, and officers transported the plaintiff. Ultimately the plaintiff had to wait sixty hours between his arrest and the probable cause hearing. *Id.* So he brought a *Riverside* claim against the Carroll County sheriff and jailor under § 1983. *Id.* Stressing the facts of the case, the Sixth Circuit ruled that the Carroll County officials

"did all that they could reasonably be expected to do in this situation" when "acting pursuant to a presumptively valid agreement to house [the plaintiff] on a temporary basis," thereby overruling the district court's denial of summary judgment on qualified immunity grounds. *Id.* at *2. In short, *Leschorn* stands for the proposition that it is not clearly established that a one-off failure to provide an arrestee a prompt probable cause hearing creates liability for a sheriff or jailor.

As noted above, the Court rejects the argument that only the arresting officer can be liable for *Riverside* violations. To repeat, officials whose customs or policies cause a *Riverside* violation can be liable even though Ohio law requires the arresting officer to effect a timely probable cause hearing. And that holding does not conflict with *Leschorn*, where the plaintiff did not allege the sheriff or jailor employed customs or policies that caused *Riverside* violations. Although *Leschorn* notes that jailors are not *typically* liable for *Riverside* violations, the Court sees nothing in that opinion that would bar liability if a sheriff knowingly employed customs ensuring that an arrestee would not receive a timely probable cause hearing. So the Court agrees with the Magistrate Judge that Jones's theory that a sheriff cannot be liable for a *Riverside* violation is unavailing. The Court therefore **DENIES** Jones's Motion to the extent it argues that, as a jailor, he is not liable as a matter of law.

To succeed on his qualified immunity defense, on the other hand, Jones must establish that Cadell failed to allege that Jones's "conduct violated a constitutional right that was clearly established law at the time." *Courtright v. City of Battle Creek,*

839 F.3d 513, 518 (6th Cir. 2016). Under that standard, the Court finds that Caddell has alleged enough to proceed past the pleadings stage.

First, the constitutional violation. Caddell asserts that Jones knew, or reasonably should have known, about customs or policies that caused *Riverside* violations in Butler County. For example, Caddell states that officers under Jones's authority, as well as Jones, knowingly conducted warrantless arrests and transported arrestees to a jail where they would be held for over 48 hours. If true, that likely shows Jones violated Caddell's right to a timely probable cause hearing. And the Court must make all factual inferences in Caddell's favor at this stage. Still, it is possible that Jones could later establish: (1) facts showing that the customs and policies in question did not affect Caddell's five-day detention; (2) that Jones did not know about these policies; or (3) that the policies in fact do not exist. So qualified immunity might be proper in the end. All in all, Jones might be right that no "direct causal link," *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 607 (6th Cir. 2007), exists between him and Caddell's asserted *Riverside* violation. But Caddell alleged that Jones knew about, and was responsible for, policies and customs that caused Caddell's five-day detention. At this stage, that assertion is enough.

Next, the Court addresses the clearly-established-law issue. Jones contends that Caddell has not asserted a clearly established right as it relates to Jones's conduct. In other words, at the time of Caddell's arrest and detention, there was no clearly established duty for jailers, according to Jones, "to secure a probable cause

hearing for a detainee on a warrantless arrest within 48 hours." (Jones's Obj., Doc. 32, #201). But, as the Court found above, the law clearly states that government officers are liable if their actions cause an untimely probable cause hearing. *Cherrington*, 344 F.3d at 644 (refusing to grant qualified immunity because the Court "lack[ed] the information necessary to resolve the issue of causation," i.e., which government official's actions caused the untimely detention). Thus, as with Campbell, Jones cannot assert qualified immunity at this time. Accordingly, the Court agrees with the Magistrate Judge that deciding the qualified immunity question would be premature at this juncture. Thus, to the extent Jones argues he is entitled to qualified immunity, the Court **DENIES** Jones's Motion, but **WITHOUT PREJUDICE** to his ability to re-raise the qualified immunity issue on a more fully developed factual record..

That being said, it is incumbent upon Caddell to identify—and soon—an "official custom or policy," for which Jones is responsible, that led to Caddell's alleged over-detention. If Jones were to put in evidence showing that no such policy or custom exists, perhaps in the form of an affidavit, it may well be the case that summary judgment on this issue would be warranted.

### 3. The Court Denies Defendant The City Of Fairfield's Motion For Partial Judgment On The Pleadings.

As with the other Defendants, the City of Fairfield's basic argument is that, as a matter of law, it cannot bear responsibility for the alleged *Riverside* violation. That is so, it claims, because the arresting officer was the City's agent (as the arrest record shows that it was Trooper York of the Ohio State Highway Patrol who arrested

Caddell), nor is the City is not responsible for operating the Fairfield Municipal Courts (which is the court that provided Caddell's hearing).

The Magistrate reached a contrary conclusion on that question, and this Court agrees. As it did in response to other Defendants' arguments, the Court concludes that the City errs in asserting that, as a matter of law, only the arresting officer can bear responsibility for a *Riverside* violation. The violation does not arise from the arrest itself, but rather from the detention that follows after the arrest. The question, then, is which entity should bear responsibility for the length of that detention. To be sure, in *Cherrington* the Sixth Circuit indicated that it would *generally* be the arresting officer who bore such responsibility, but it is overreading that case to say that *only* the arresting officer can do so. Here, it is not clear who decided where Caddell would be transported after arrest, nor who undertook that transport, nor what the municipality knew about the length of the detention that would follow from taking Caddell to the Butler County Jail (if it was in fact a municipal agent who made that decision pursuant to some official custom or policy).

What is more, Caddell's operative Complaint squarely alleges that the City of Fairfield "employ[s] policies or customs whereby the officers of [its] police forces transport certain individuals arrested without a warrant to the Butler County Jail. The[] [City] know[s], or reasonably should know, that many of these individuals will be detained in excess of 48 hours without appearance before a judicial officer." (Second Am. Compl., Doc 45, #324). That statement identifies a municipal custom under which Fairfield police officers arrest individuals without a warrant and take

them to be detained at a jail known to commit *Riverside* violations. That could be sufficient to give rise to a claim for municipal liability under *Monell*.[2] As such, the City of Fairfield cannot show that Caddell's claims fail at the dismissal stage.

Separately, the City of Fairfield argues that Sixth Circuit precedent requires finding, as a matter of law, that a municipality cannot be liable for a municipal court's conduct because those courts are arms of the State, and are thus shielded by the Eleventh Amendment. It cites *Ward*, 640 F. App'x at 464, for the proposition that a municipal court "is considered an arm of the state for the purposes of § 1983." (Fairfield's Obj., Doc. 35, #233). And the City of Fairfield faults the Magistrate for not applying that case.

On this point, the Court agrees with the City of Fairfield. In *Ward*, the Sixth Circuit followed *Alkire* to conclude that the Norwalk Municipal Court is an arm of the State of Ohio. 640 F. App'x at 465; *see also Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988) (noting that municipal court is not part of "the municipal corporation in which it sits," but rather "is part of the Ohio state court system, established by the Ohio state legislature"). Thus the City of Fairfield cannot be liable based on any customs or policies that the Fairfield Municipal Court adopted.

Still, as noted, the City of Fairfield faces potential liability for the *Fairfield Police Department's* polices and customs. And that provides a separate, independent

---

[2] As explained above, *Cherrington* does not cabin responsibility for *Riverside* violations in the arresting officer. Even if York, and not a Fairfield police officer, was Caddell's arresting officer, that does not preclude liability for other government actors. Thus, the Court rejects the City of Fairfield's attempt to absolve itself by identifying an arresting officer who operated outside the municipality's authority.

basis for municipal liability. Thus, the Court ultimately agrees with the Magistrate Judge that the City of Fairfield is not entitled to dismissal. Accordingly, the Court **DENIES** the City of Fairfield's Motion for Partial Judgment on the Pleadings.

## CONCLUSION

Based on the above, the Court **ADOPTS** the Second R&R (Doc. 55). Accordingly, the Court **DENIES** the Defendants' Motions to Dismiss (Docs. 9, 12, & 50); the Defendants' Motions for Judgment on the Pleadings (Docs. 16, 51, & 53); the Defendants' Objections to the First R&R (Docs. 32, 34, & 35); and Plaintiff's Motion to Strike (Doc. 19). The City of Fairfield, however, is not responsible for actions taken by the Fairfield Municipal Court and thus cannot be found liable on that basis. The Court **DENIES** the City of Fairfield's Motion for Judgment on the Pleadings (Doc. 53) as it relates to municipal liability stemming from the Fairfield City Police Department's customs and policies. Finally, Defendants Campbell and Jones' Motions (Docs. 50 & 51), as pertaining to qualified immunity, sovereign immunity, judicial immunity, and the *Rooker-Feldman* doctrine, are **DENIED,** but **WITHOUT PREJUDICE** to the Defendants' ability to re-raise the immunity issues on a more fully developed factual record.

**SO ORDERED.**

May 28, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**