## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ANSELM CADDELL,** *on behalf of himself and all others similarly situated,* **et al.,**

**Plaintiffs,**

v.

**JOYCE A. CAMPBELL,** *et al.,*

**Defendants.**

**Case No. 1:19-cv-91**
**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## <u>OPINION AND ORDER</u>

Plaintiffs Anselm Caddell and Caleb Lawson moved unopposed for class certification. (Doc. 70). After review, the Court **CERTIFIES** the class as defined in the parties' Amended Stipulation (Doc. 72). The Court also **APPOINTS** Plaintiffs Anselm Caddell and Caleb Lawson as class representatives. And the Court **APPOINTS** Paul M. Laufman and Gregory A. Napolitano as class counsel.

## BACKGROUND

Law enforcement officers from the City of Fairfield (a Defendant here) arrested Plaintiffs Anselm Caddell and Caleb Lawson. (Am. Compl., Doc. 6, #17). Neither arrest occurred pursuant to a warrant. (*Id.*). Caddell and Lawson then waited more than forty-eight hours in Defendant Sheriff Richard Jones's Butler County Jail before receiving their initial appearances. (*Id.*). The pair then appeared before the Fairfield Municipal Court, over which Defendant Joyce A. Campbell presides. (*Id.*).

In this § 1983 action, Caddell and Lawson claim this pre-arraignment detention violated their constitutional rights. (*Id.* at #22); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Caddell and Lawson also contend that Campbell and the City have a policy or custom of detaining warrantless arrestees in the Butler County Jail for longer than 48 hours before their initial appearance. (*Id.* at #17).

Beyond seeking to vindicate their own rights, Caddell and Lawson sued on behalf of a putative class of arrestees whose rights they believe Defendants violated in the same manner.[1] (Doc. 6). After conferring, the parties agreed to certain class stipulations. (*See* Docs. 70-1; 72). The Plaintiffs also submitted an Unopposed Motion for Class Certification (Doc. 70). The matter is now ripe.

## LEGAL STANDARD

A class action represents "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). To justify departure from the typical named-parties-only rule, a putative class representative must make certain showings.

First, under Federal Rule of Civil Procedure 23(a), the named plaintiff(s) must show that: (1) the class is so numerous that joinder is impracticable (numerosity); (2) legal or factual questions are common to the class (commonality); (3) the

---

[1] This case has a long procedural history. Because those details are not pertinent to this Opinion, the Court does not recap that history here.

representative parties possess claims or defenses typical of the class's claims or defenses (typicality); and (4) the representative parties will fairly and adequately protect the class's interests (adequacy). Fed. R. Civ. P. 23(a). These requirements limit the potential abuse of the class action mechanism by ensuring that the class claims are "fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349 (citation omitted).

Beyond satisfying the four factors Rule 23(a) identifies, though, a putative class also must meet one provision of Rule 23(b). Here, the parties rely on Rule 23(b)(3). That provision requires the Court to consider two issues—predominance and superiority.

Start with the former. To certify a class under Rule 23(b)(3), the court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This "predominance" inquiry is similar to, though "more stringent" than, Rule 23(a)(2)'s "commonality" requirement, with predominance said to "subsume[]" or "supersede[]" commonality. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). In other words, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)['s commonality requirement]." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citing *Amchem*, 521 U.S. at 623–24).

Superiority, on the other hand, requires the court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This "superiority" requirement

aims to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 adv. comm. n. to 1966 amend.).

## LAW AND ANALYSIS

Everyone has agreed to stipulations addressing class issues here. (Doc. 70-1). They stipulate that numerosity is met and that proposed class counsel are adequate, as well as to a proposed amended class definition:

> Plaintiffs and those individuals subject to a warrantless arrest by City of Fairfield Police Officers from February 1, 2017 until February 28, 2019, and who were held by the Butler County Sheriff's office for more than 48 hours on charges pending in the Fairfield Municipal Court, if held without a post-arrest probable cause determination by a judicial officer and not otherwise subject to lawful detention for reasons unrelated to the warrantless arrest.[2]

(Doc. 72, #497). The Defendants likewise have not opposed the Plaintiffs' Motion for Class Certification. Stipulations notwithstanding, though, class actions implicate parties not before the Court. So the Court has an independent duty to ensure the proposed class meets Rule 23's rigors.

---

[2] The parties originally submitted a slightly different stipulated class definition. (Doc. 70-1, #490). The Court raised concerns, however, that the proposed definition created an impermissible fail-safe class. *See Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). The parties then submitted an amended stipulated class. (Min. Entry 5/03/2023; Doc. 72).

**A.      The Putative Class Satisfies Rule 23(a)**

**1.      The Putative Class Meets Numerosity.**

"There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Still, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

The parties stipulate the putative class definition meets the numerosity requirement. (Doc. 70, #481–82). More importantly, Defendants' processing records show the class contains some 500 members. (*Id.*). The Court agrees that a class containing 500 potential members meets numerosity.

**2.      The Putative Class Members Share Common Factual and Legal Questions.**

"To demonstrate commonality, the plaintiffs' 'claims must depend on a common contention … of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). "[W]hen the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met." *Castellanos v. Worldwide Dist. Sys. USA, LLC*, No. 2:14-cv-12609, 2016 WL 11678220, at *6 (E.D. Mich. June 20, 2016) (citation omitted).

The putative class members share commonalities. For one, they share very similar facts, at least as relevant to their constitutional claims. Following their

warrantless arrests, each waited in the Butler County Jail for more than 48 hours prior to appearing before Campbell. (Doc. 70, #483). And none were subject to lawful detention for reasons unrelated to their warrantless arrest. They also share similar legal questions—whether this extended detention violated their constitutional rights and whether, if so, the Defendants have a policy or custom that led to that violation. (*See id.*). So commonality exists.

### 3. The Putative Class Representatives Are Typical Of The Class.

"[T]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Sprague*, 133 F.3d at 399). Typicality and commonality "tend to merge in practice." *In re Whirlpool*, 722 F.3d at 853 (cleaned up). "[A] necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Young*, 693 F.3d at 542 (quoting *Sprague*, 133 F.3d at 399).

For much the same reason the class satisfies commonality, the named Plaintiffs are typical of the class. Similar to the other putative class members, Caddell and Lawson were subject to a warrantless arrest and detained in the Butler County Jail for over 48 hours before receiving an initial appearance. (Doc. 70, #484–85). And Caddell and Lawson believe this detention violated both their rights and the class

member's rights in the same way. (Doc. 6, #22). In advancing their own interests, they necessarily will advance the class's interests. Typicality also exists.

### 4. The Putative Class Representatives Are Adequate.

That leaves the last Rule 23(a) requirement—adequacy. "[C]ommonality and typicality tend to merge with the requirement of adequate representation." *In re Whirlpool*, 722 F.3d at 853. To be adequate, two criteria must be met: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525)). "The adequacy inquiry … serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beattie*, 511 F.3d at 562 (quoting *Amchem*, 521 U.S. at 625–26).

There are no known conflicts between Caddell, Lawson, and the putative class. (Doc. 70, #485). To the contrary, they have common interests with the class, as they too have been allegedly illegally detained. And Caddell and Lawson appear ready to vigorously prosecute this case—as they have been for over four years. (*Id.*). Adequacy exists.

## B. The Putative Class Meets Rule 23(b)(3).

With Rule 23(a)'s prerequisites met, that leaves Rule 23(b). Plaintiffs seek to certify the class under Rule 23(b)(3). Accordingly, Plaintiffs must establish predominance and superiority.

Start with predominance. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011)). But "[a] plaintiff class need not prove that each element of a claim can be established by classwide proof." *In re Whirlpool*, 722 F.3d at 858 (citing *Amgen*, 568 U.S. at 468). Indeed, "[a] class may be certified based on a predominant common issue even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (citation and internal quotation marks omitted).

The Plaintiffs satisfy predominance. The Defendants allegedly subjected each class member to the same deprivation of rights in largely the same manner. And while the Defendants intend to assert defenses, the Plaintiffs say these defenses will likely be "common to all class members." (Doc. 70, #486).

True, the Defendants also reserve the right to challenge whether various arrested individuals are properly part of the class—because, for example, they were "otherwise subject to lawful detention for reasons unrelated to the warrantless arrest." (Doc. 70, #481; Doc. 72, #497). But this does not change the Court's conclusion. According to the Plaintiffs, "any possible defense based on individual circumstances and extraordinary circumstances that justify a detention beyond forty-eight hours does not predominate." (Doc. 70, #486). The Defendants do not dispute

this. And absent evidence such individualized determinations will overwhelm common questions, the Court finds the predominance prong met. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (noting a court cannot rely on "speculation and surmise" that a unique defense will undermine predominance).

That leaves superiority. Under Rule 23(b)(3), a plaintiff must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Pertinent here, a court should consider—(1) "the class members' interests in individually controlling the prosecution or defense of separate actions," (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members," (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and (4) "the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

The superiority analysis "aims to 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 415 (6th Cir. 2018) (quoting *Amchem*, 521 U.S. at 615). "Use of the class method is warranted particularly because class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861.

Potentially small individual recoveries to class members support the use of class treatment. *See Beattie*, 511 F.3d at 567.

Superiority too is met. As Plaintiffs note, "the costs of initiating and prosecuting many individual lawsuits … would be wholly inefficient," "uneconomical for the potential class members," and "an unnecessary waste of judicial resources." (Doc. 70, #487). The Court agrees. Individual lawsuits would create unnecessary duplication of litigation given the overlapping facts and law. And the Court sees no evidence other class members desire to control their own litigation, and the class appears manageable based—once again—on the similar alleged facts and potential defenses. In short, a class action is the superior method to litigate these claims for all involved.

For all these reasons, this case is well suited for class treatment. The Court thus certifies the class as described. And the Court appoints Anselm Caddell and Caleb Lawson as class representatives.

## C.    The Court Appoints Paul M. Laufman And Gregory A. Napolitano As Class Counsel.

After certifying a class action, a Court must appoint class counsel under Rule 23(g). The rule states:

(1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

10

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g).

The parties stipulate that Paul M. Laufman and Gregory A. Napolitano are appropriate class counsel. (Doc. 70, #491). In support, the attorneys have attached declarations attesting to their professional diligence, experience litigating complex civil rights cases, and extended representation of named Plaintiffs. (*Id.* at #492–95). On review of these materials and the Rule 26(g), factors, the Court agrees that the proposed counsel are capable and adequate. They have the experience and diligence necessary to vigorously litigate for the class's benefit, and they have capably represented Caddell and Lawson until now. The Court appoints them to represent the class.

## CONCLUSION

For these reasons, the Court **GRANTS** the Motion to Certify (Doc. 70) and **CERTIFIES** the class as defined in the parties' Amended Stipulation (Doc. 72). The Court **APPOINTS** Plaintiffs Anselm Caddell and Caleb Lawson as class representatives. And the Court **APPOINTS** Paul M. Laufman and Gregory A. Napolitano as class counsel.

11

The Court **ORDERS** counsel for the parties to meet and confer and submit a proposed agreed class notice to this Court within fourteen (14) days of this Opinion's issuance. If counsel cannot reach agreement, Plaintiffs shall file their proposed notice by the same deadline, and Defendants shall file their specific objections to the proposed notice within fourteen (14) days after Plaintiffs file. If desired, Plaintiffs may respond to Defendants' objections within five (5) days after Defendants object.

 **SO ORDERED.**

May 30, 2023
_____
**DATE**

        _____
        **DOUGLAS R. COLE**
        **UNITED STATES DISTRICT JUDGE**