### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**ANSELM CADDELL, et al.,**

      **Plaintiffs,**

        **v.**

**JOYCE A. CAMPBELL, et al.,**

      **Defendants.**

**Case No. 1:19-cv-91**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## OPINION AND ORDER

This § 1983 class action lawsuit stems from claims that Defendants violated Plaintiffs' and other individuals' constitutional rights by arresting them without a warrant and detaining them for over forty-eight hours before bringing them before a judge for a probable cause determination. Plaintiffs, on behalf of themselves and all others similarly situated, now seek to settle their claims with Defendants. To that end, the parties jointly moved for preliminary approval of the settlement, attaching the proposed settlement agreement. (Doc. 84). But they have since filed an Amended Class Action Settlement Agreement (Doc. 85), which the Court will treat as the operative agreement. For the reasons discussed below, the Court **GRANTS** the Joint Motion for Preliminary Approval of Settlement Agreement (Doc. 84).

## BACKGROUND[1]

### A.   Factual and Procedural Background

Law enforcement officers from Defendant City of Fairfield's Police Department arrested Named Plaintiffs Anselm Caddell and Caleb Lawson, on separate occasions, without a warrant. (2d Am. Compl., Doc. 45, #325–27). Each of them was detained in the Butler County Jail, which Defendant Sheriff Richard Jones oversees, (*id.* at #320), for more than forty-eight hours while they awaited an initial appearance before a judicial officer, (*id.* at #325–27). For example, police arrested Caddell on Thursday, February 23, 2017, but he did not appear before Defendant Judge Campbell at the Fairfield Municipal Court until five days later, on Tuesday, February 28, 2017. (*Id.* at #325). Similarly, law enforcement arrested Lawson on Friday, January 25, 2019, and four days passed before he appeared before Judge Campbell. (*Id.* at #326–27).

Caddell originally brought this § 1983 putative class action on February 1, 2019, claiming that his prolonged detention before an initial appearance violated his constitutional rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments. (Compl., Doc. 1, #5). Caddell later filed a Second Amended Complaint, adding Lawson as an additional Named Plaintiff. (Doc. 45, #320). Together, they claim that the Constitution requires state officials to ensure that persons arrested without a warrant, and who are not otherwise subject to lawful detention for reasons unrelated to that warrantless arrest, receive an initial appearance before a judicial officer

---

[1] The Court cites the allegations in the Second Amended Complaint (Doc. 45) in relaying the relevant background. But it notes that Defendants, in the proposed class action settlement, deny any wrongdoing. (Doc. 85, #588–89 ("The Parties disagree as to the issues of liability.")).

within forty-eight hours. (*Id.* at #323 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991))).

They further allege that each of the named Defendants played a role in depriving them of this right. Defendant Judge Campbell, for example, presides over the Fairfield Municipal Court and thus acts as its policymaker. (*Id.* at #322–23). They claim that, in that capacity, she adopted a policy or custom of "fail[ing] to convene court on days when she knows" that this failure will lead to individuals being held for over forty-eight hours before arraignment.[2] (*Id.* at #323). Likewise, Plaintiffs claim that Defendant Sheriff Jones and the City of Fairfield, on behalf of the Fairfield Police Department, have a policy or custom of conducting warrantless arrests and then detaining those individuals beyond the allowable forty-eight-hour period. (*Id.* at #323–24).

Caddell and Lawson did not sue merely to vindicate their own constitutional rights. They also brought this lawsuit as a putative class action. (*Id.* at #319). On May 30, 2023, the Court certified a class as defined in the parties' Amended Stipulation. (Doc. 73). Specifically, the class includes:

> Plaintiffs and those individuals subject to a warrantless arrest by City of Fairfield Police Officers from February 1, 2017 until February 28, 2019, and who were held by the Butler County Sheriff's office for more than 48 hours on charges pending in the Fairfield Municipal Court, if held without a post-arrest probable cause determination by a judicial officer and not otherwise subject to lawful detention for reasons unrelated to the warrantless arrest.

---

[2] For example, if the court does not convene on Mondays, then anyone arrested on a Friday evening after court closed that day necessarily would be held for more than forty-eight hours by the time court opened on Tuesday.

(*Id*. at #502 (citing Doc. 72, #497)). Defendants' records show this class includes approximately 500 individuals. (*Id*. at #503). Along with class certification, the Court also appointed Named Plaintiffs Caddell and Lawson as the class representatives and Paul M. Laufman and Gregory A. Napolitano as class counsel. (*Id*. at #508–09). Since it certified the class under Federal Rule of Civil Procedure 23(b)(3), the Court also ordered the parties to submit a plan within fourteen days for class-wide notice that would provide class members an opportunity to opt out. (*Id*. at #510; Notice, Doc. 75-1). While the parties initially submitted a Proposed Agreed Class Notice (Doc. 75), they later agreed that notifying the class at that point in time was unnecessary. (7/6/23 Min. Entry).

After mediation and subsequent negotiation, the parties now seek to bring this dispute to a close by settling the claims at issue. The parties filed an initial Joint Motion for Preliminary Approval of Settlement Agreement with the proposed settlement agreement attached. (Doc. 84). But at a telephonic conference on that proposed settlement agreement, the Court noted that the high proposed incentive awards for the Named Plaintiffs may pose a problem for approval. (7/29/25 Min. Entry). The parties responded by submitting an Amended Settlement Agreement, addressing those payments. (Doc. 85). In this Order, the Court will rely on the terms as stated in the Amended Settlement Agreement unless otherwise noted.

**B.    Terms of the Proposed Settlement Agreement**

The settlement agreement proposes that Defendants collectively pay $1,215,000 into a Settlement Fund. *(Id.* at #594). The claims administrator will pay

out the Settlement Fund as follows. First, it will pay the notice and settlement administration costs, the class representatives' service awards, and the attorneys' fee award. (*Id.* at #594). Taking those in order, the claims administrator currently estimates its costs as approximately $19,101, but the proposed agreement authorizes administrative costs up to $25,000. (*Id.* at #590). As for service awards, the agreement contemplates that Anselm Caddell shall receive a sum not to exceed $20,000, while Caleb Lawson will receive an award not to exceed $10,000, with the exact amounts, subject to those limits, left to the Court. (*Id.* at #594). Finally, attorneys' fees will not exceed $405,000, approximately one-third of the Settlement Fund, plus costs and expenses. (*Id.*). Again, though, the Court will determine the exact amounts of each component of the fee award. (*Id.* at #594–95). If the Court awards the maximum amounts in these three categories, approximately $755,000 will remain available in the Settlement Fund for distribution to valid claimants.

Before diving into the details of what each claimant will receive, though, the settlement agreement first addresses how the claims administrator will go about determining who is a valid class member. Upon the Court's preliminary approval, Defendants will provide potential class members' "last known addresses, dates of birth, and [] last four digits of the[ir] Social Security Number" to the claims administrator based on a "good-faith search of the records." (*Id.* at #592). (Presumably, the list of potential class members will come from the search of the same records on which the parties relied in connection with the earlier efforts at class certification). (*See* Doc. 73). Once the claims administrator has the list of potential

class members, the administrator will send out a notice, described below, to each one. (Doc. 85, #592). Only those persons who actually submit a claim form will be considered as a potential recipient of settlement funds. (*Id.* at #593). Once the claims administrator receives the claim forms, it will cross-check those forms "against jail records and court records, including the court's docket." (*Id.* at #595). The claims administrator will check for two things: (1) whether the "Claimant was arrested within the City of Fairfield and held by the Butler County Sheriff's office during the settlement class period," and (2) whether "Booking Records and Court Files do not show that the Claimant was released or given a judicial determination of probable cause within 48-hours of arrest." (*Id.*). If both criteria are met, then the Claimant is entitled to receive a payout (what the Court will refer to as Participating Class Members in this Order). (*Id.*).

So what does each Participating Class Member receive? It depends. To start, each one will receive a $500 "Base Award." (*Id.* at #596). But they will also receive a variable award (what the agreement calls an "Hourly Award"). This latter award depends on two factors. First, whether they were released on their own recognizance when they eventually appeared before a judge. (*Id.*). And second, "the number of hours which they were detained beyond the 48-[hour] period authorized by law ('Hours of Over-Detention')." (*Id.*). More specifically, the claims administrator will tally each individual Participating Class Member's hours of detention.[3] Then, because

---

[3] The claims administrator will calculate the hours by starting with the "time listed on the Booking Record" for each claimant and ending at "10:00 a.m. on the morning of the Claimant's

Participating Class Members are meant to be compensated only for "over-detention," forty-eight hours will be subtracted from each person's total (as Plaintiffs concede that forty-eight hours of detention is lawful). (*Id.*). But beyond that, as to any Participating Class Member who was released on their own recognizance, their hours will then be "increased by a multiple of three." (*Id.*). This multiple is designed to provide additional compensation to any Participating Class Member who "would have presumptively been released" had they received an earlier arraignment. (*Id.* at #597). After determining each *individual* Participating Class Member's over-detention hours in this manner, the claims administrator will then sum all hours across the Participating Class Members to get the total hours of over-detention. (*Id.* at #596). From there, the claims administrator will divide the remaining Settlement Fund amount (calculated after the "payment of Attorney Fees, expenses, Administration Costs, and Base Awards") by that total hours figure. (*Id.* at #596–97). That will provide an "Hourly Rate for Over-Detention." (*Id.*). Then the administrator will multiply each individual Participating Class Member's over-detention hours by that hourly rate to arrive at an "Hourly Award" for that individual. (*Id.* at #597). The Hourly Award combined with the $500 Base Award will be the "Final Award" for each Participating Class Member. (*Id.*).

As part of the settlement, the Settlement Class Members agree to broadly release "any and all claims, demands, rights, causes of action, compensatory and

---

arraignment before the Fairfield Municipal Court." (Doc. 85, #596). And "any partial hours will be rounded up to the next nearest hour." (*Id.*).

punitive damages, attorneys' fees, costs, debts, or liabilities which all members of the Settlement Class in the Action now have, or had at any time prior to and through the date of this release arising out of or in any way related to the allegations in the First Amended Complaint."[4] (*Id.* at #603). The agreement includes a separate release provision for the Named Plaintiffs, but it is substantively the same. (*Id.*).

As a final note, the "parties stipulate that Plaintiffs shall be considered prevailing parties pursuant to 42 U.S.C. §§ 1983, 1988." (*Id.* at #592).

## C. Notice Plan

Beyond establishing the substantive terms of the settlement, the agreement also addresses how the settlement is to be administered. The parties propose Rust Consulting, Inc., to act as the claims administrator. (*Id.* at #590).[5] In that capacity, Rust Consulting will process class claims and distribute payments to the class; process and disburse attorneys' fee awards and service awards; and provide notice to the class. (*Id.* at #590, 592–5; Doc. 84-1, #575). To effectuate notice, Rust Consulting will start with the "last known addresses, dates of birth, and the last four digits of

---

[4] Presumably, this release also applies to allegations arising out of the Second Amended Complaint. Because the only difference between the complaints is the addition of Caleb Lawson as a Named Plaintiff, (Doc. 45, #320), the allegations are substantively the same regardless.

[5] For the original proposed settlement agreement, the parties attached an Exhibit A describing Rust Consulting's experience as a settlement administrator and its proposed fees. (Doc. 84-1, #573–76). While these pages state that Rust Consulting is an experienced labor-and-employment settlement administrator, it does not discuss any experience with § 1983 or other constitutional-claims class actions. (*Id.*). The Court also notes that the projected cost is $20,066–22,305, (*Id.* at #573, 575), even though the proposed agreement states the estimated cost is $19,101, (Doc. 85, #590). Nevertheless, this is still within the authorized maximum of $25,000. (*Id.*).

the Social Security Number" for each person Defendants turn over to Rust based on their "good-faith search of the records." (*Id.* at #592). Using that information, Rust Consulting will send the approved notice, including the claim form, by first class U.S. mail to each potential member within 30 days of entry of the Court's preliminary approval. (*Id.*). If the mail returns with a forwarding address, the administrator will try a second mailing to that address. (*Id.* at #593). But for any mail returned without a forwarding address, or returned as undeliverable after a second attempt, "no further mailing shall be required." (*Id.*).

During this time, Rust Consulting will also issue a Published Notice, although the agreement is light on details as to where it will be published. (*Id.*). That said, the parties have since informed the Court that the plan is to publish the notice one time in the Hamilton Journal News, and that the Published Notice also will remain on the newspaper's website until the end of the claim period. Additionally, the administrator will establish a toll-free phone number to answer potential members' questions as well as maintain a website for at least 180 days that will contain "copies of the Settlement Agreement and its exhibits, the Mailed Notice, the Published Notice, the Claim Form, and the Preliminary Approval Order." (*Id.*).

Once the notice is mailed, potential class members will have 60 days to submit a claim form or request for exclusion from the class. (*Id.*). As discussed earlier, the claims administrator will review the claim forms and determine if the individual is properly included in the class. (*Id.* at #595).

9

Assuming the Court grants final approval, within 14 days of that final order, Rust Consulting will mail all individuals who submitted claim forms to inform them as to whether they had a valid claim. (*Id.* at #598). If the individual is a valid Settlement Class Member, the final notice will also include an estimated Final Award (the Base Award plus Hourly Award). (*Id.*). All claimants will have 30 days to object to "the determination of claim validity or the calculation of their Hours of Over-Detention." (*Id.*). Rust Consulting will receive any objections and coordinate with counsel for the parties to resolve them, and within 30 days of resolution, it will pay the final awards to all Settlement Class Members. (*Id.* at #599). Class Members will have 180 days to cash the final award check. (*Id.*). Should any Class Members fail to cash the check, the funds will remain in the Settlement Fund and revert to Defendants "in proportion to each [Defendant's] contribution." (*Id.*). Lastly, the claims administrator will submit a report 60 days after it finishes distributing the awards. (*Id.*).

The Court has reviewed the proposed settlement agreement, (Doc. 85), and the Joint Motion for Preliminary Approval of Settlement Agreement (Doc. 84). It now must decide whether to preliminarily approve the Settlement Agreement.

## LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Because of the unique concerns attendant to representative forms of litigation—

where class members' rights are finally adjudicated in their absence—class actions require heightened judicial oversight. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810–11 (1985) (noting the multiple "safeguards provided for [absent class members'] protection"); Fed. R. Civ. P. 23. So class action settlements can proceed "only with the court's approval." Fed. R. Civ. P. 23(e); *see also Stanley v. Turner Oil & Gas Props., Inc.*, No. 2:16-cv-386, 2018 WL 2268138, at *1 (S.D. Ohio Mar. 6, 2018) ("[T]o protect the rights of absent parties, courts review class action settlements.").

Judicial approval of a class action settlement is a three-step process. A court must: (1) preliminarily approve the proposed settlement; (2) distribute notice of the proposed settlement to the class; and finally, (3) hold a fairness hearing and determine whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *Smith v. Fifth Third Bank*, No. 1:18-cv-464, 2021 WL 11713313, at *2 (S.D. Ohio Aug. 31, 2021) (citing *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *1 (S.D. Ohio Jan. 26, 2011)).

The first step—preliminary approval—requires a court to determine whether it is "likely" to find that the proposed settlement is "fair, reasonable, and adequate."[6] Fed. R. Civ. P. 23(e)(1)(B), (e)(2). That determination is "more an art than a science." *Smith*, 2021 WL 11713313, at *2. But it's an art with some guiding principles. Rule 23(e) directs courts to consider whether:

---

[6] When a class is not yet certified, courts must also consider whether they are "likely" to "certify the class for purposes of judgment on the proposal" at the preliminary approval stage. Fed. R. Civ. P. 23(e)(1)(B). But that does not apply here, as the Court has already certified the class. (Doc. 73).

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:
   (i)    the costs, risks, and delay of trial and appeal;
   (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2023 WL 8811499, at *10 (S.D. Ohio Dec. 20, 2023).[7] The bar to clear those factors isn't particularly high at the preliminary approval stage. *In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*, No. 2:22-md-3025, 2022 WL 20178514, at *1 (S.D. Ohio Oct. 28, 2022). While preliminary approval is not a mere "rubber stamp," the Court "applies a less strict standard … than is required for final approval because the Court considers only whether the [proposed settlement] will 'likely' satisfy the above requirements." *Id.*

The second step—directing notice of the agreement to the class—requires the Court to determine whether the proposed notice plan would give notice "in a

---

[7] Before Rule 23 was amended in 2018, it "required a court to find only that the settlement was 'fair, reasonable, and adequate,' with no elaboration as to what factors were relevant to that finding." *Hawes*, 2023 WL 8811499, at *10. So courts in the Sixth Circuit made that determination by applying the seven factors laid out in *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007). But as this Court has explained elsewhere, the *UAW* factors "fold[] into" the factors now elaborated in Rule 23 after the 2018 amendments. *Hawes*, 2023 WL 8811499, at *10. So given that redundancy, the Court will refer only to the Rule 23 factors in its analysis here.

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice plan need only provide "the best notice that is practicable under the circumstances," describing in "plain, easily understood language," the nature of the action, the individual class member's right to opt-out, and the binding consequences of remaining in the class, among other things. Fed. R. Civ. P. 23(c)(2)(B).

## LAW AND ANALYSIS

As the legal standard makes clear, the Court faces two tasks. First, it must assess whether the proposed settlement agreement is likely to satisfy Rule 23(e)'s requirements. Then, if so, the Court must decide whether the proposed notice plan will adequately apprise the absent class members of their rights under Rule 23(c)(2)(B). The Court ultimately finds that the proposed agreement is fair, reasonable, and adequate, and that the notice plan is sufficient.

### A. The Court is Likely to Find that the Proposed Settlement Agreement is Fair, Reasonable, and Adequate Under Rule 23(e).

The Court first considers Rule 23(e)'s four factors for preliminary class action settlement approval: whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other. *See Hawes*, 2023 WL 8811499, at *10. Finding that the settlement agreement likely is fair, reasonable, and adequate, the Court preliminarily approves the agreement. Fed. R. Civ. P. 23(e)(2).

### 1. Adequacy of Representation

The adequacy-of-representation inquiry at the settlement approval stage "mirrors the adequacy prong … that the Court analyzed when certifying the class." *Hawes*, 2023 WL 881499, at *11. But it's also more specific: the question at this point focuses on the class representatives' and class counsels' "adequacy … *in relation to the settlement terms and notice process*." *Id.* (emphasis added).

Here, the settlement terms affirm that the Named Plaintiffs and Class Counsel adequately represented the class in negotiating the proposed settlement agreement. As the Court noted when it certified the class, Caddell and Lawson have vigorously prosecuted this case for over five years at this point. (Doc. 73, #505). Additionally, they both were deposed and participated in discovery. (Doc. 84, #540). Class Counsel has also "negotiated zealously" by engaging in extensive motions practice, multiple attempts at mediation, and ultimately arriving at a stipulated class definition and settlement agreement. (*Id.*).

For those reasons, the Court finds that Class Counsel and the Named Plaintiffs have adequately represented the absent class members in connection with the proposed settlement agreement.

### 2. Arm's Length Negotiations

The Court is satisfied, based on class counsel's representation and the mutual concessions in the proposed settlement agreement, that the settlement was negotiated at arm's length and was not plagued by fraud or corruption. *See Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, Nos. 5:15-cv-2223, 3:15-cv-2673, 2018

WL 4539287, *2 (N.D. Ohio Sept. 21, 2018) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary." (cleaned up)). Further, the parties have been litigating—vigorously and unabatedly—for six years. (*See* Doc. 1 (complaint filed February 2019)). Beyond that, and perhaps even more to the point, the settlement process itself was time-consuming and hard fought. The parties attempted mediation several times, which ultimately was successful with the "assistance and input of Magistrate Judge Litkovitz and Senior District Judge Barrett." (Doc. 84, #541). So the Court has no concerns that the settlement here was in any way collusive.

### 3.    Adequacy of Relief

The Court finds that the settlement agreement adequately compensates the class. Rule 23(e)(2)(C) instructs the Court to consider: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class"; and (3) "the terms of any proposed award of attorney's fees."[8]

Here, the potential costs and risks of litigation could be significant for both the class and the Defendants. "There is no question that a settlement avoids costs, risks, and delay that would be attendant to trial." *Raymo v. FCA US LLC*, No. 2:17-cv-12168, 2023 WL 6429548, at *3 (E.D. Mich. Sept. 30, 2023); *see also Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (affirming the district court's finding that the risk of long and protracted litigation counseled in favor of final approval). If

---

[8] The parties identified no agreements (other than the settlement agreement) that are relevant to the Court's consideration, so the fourth adequacy of relief prong is not relevant. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

this case proceeded to summary judgment or trial, Defendants would face significant discovery costs concerning the review of all detention records and would risk a higher adverse judgment. Conversely, as Class Counsel notes, the Defendants have "claims of immunity … [that] could delay or defeat recovery by the class." (Doc. 84, #542). If those claims of immunity were successful, the class could recover nothing. At the very least, "further litigation … [could] prolong[] the uncertainty." (*Id.*).

Against that backdrop, the proposed settlement agreement provides adequate relief. The amount of the agreed common fund is $1,215,000, and there will be at least $755,000 remaining for class members after all fees, costs, and service awards are distributed. (Doc. 85, #589). While the Court does not have any information about an average payout, processing records show an estimated class size of 500 members. (Doc. 73, #503). That means the average payout will be $1,510. And every Participating Class Member is guaranteed a base amount of $500. (Doc. 84, #541; Doc. 85, #596). That is an adequate recovery in light of the costs, risks, and delay of trial and appeal.[9]

As for the effectiveness of distributing relief, the Court does not have much information regarding how the parties will determine, or have determined, the list of potential class members. When the Court certified the class, it partially relied on

---

[9] Beyond the payout, the Parties also state that this lawsuit already has led Defendants to change its policies. (Doc. 84, #541). They report that now an "arrestee's time in custody at the Butler County Jail is tracked in accord with the 48-hour rule; the Court is accessible such that any arrestee is able to receive a probable cause determination within 48 hours of arrest; and arrestees are, in fact, receiving a probable cause determination within 48 hours of arrest." (*Id.*). The Court appreciates that remediation efforts already have helped "the public at large." (*Id.*).

Defendants' stipulation that there are approximately 500 putative class members. (Doc. 70, #481–82; Doc. 70-1, #490). This estimate was based on "Defendants' review of persons processed by Defendants." (Doc. 70-1, #490). While this was sufficient to establish numerosity, the parties will need a specific list of potential class members in order to properly distribute notice to all of them. Perhaps Defendants created a list or database when they reviewed records previously, but it is not clear to the Court if class counsel or the claims administrator have reviewed or in any way will verify the pool of potential class members. The only role for the claims administrator appears to be receiving contact information for the potential members. (Doc. 85, #592). The Court is concerned that potential members could be overlooked. True, the arrest records themselves likely are complete, but the Court's concern is that the Defendants may not be entirely accurate in identifying, based on cross-referencing with court records, which of the arrestees were held for more than forty-eight hours.

But the proposed agreement also states that the claims administrator will issue a Published Notice. (*Id.* at #593).[10] The parties intend to publish the notice in the newspaper of record for the area, the Hamilton Journal News, and keep the Published Notice on the newspaper's website until the end of the claims period. The

---

[10] The parties' agreement states that the "Claims Administrator shall issue the Published Notice, as set forth in further detail in Exhibit C." (Doc. 85, #593). There are no exhibits attached to the Amended Settlement Agreement (Doc. 85) though. True, the parties attached exhibits to the original Proposed Settlement Agreement. (Doc 84-1). But there, Exhibit C is the mailed notice. (Doc. 84-1, #579). Exhibit D is the "Legal Notice of Class Action Settlement," so the Court assumes that document is the Published Notice. (*Id.* at #587). But Exhibit D does not contain details about how or where the claims administrator will issue the Published Notice. That led the Court to inquire further of the parties, which elicited the publication details noted above.

addition of this publication notice alleviates, at least to some extent, the Court's concern about overlooked potential class members. And, in any event, the standard is not perfection, but reasonableness, and the Court believes that the specified method will be reasonably effective in directing distributions to the correct persons.

Beyond that, the parties and claims administrator have a clear plan for mailing notice. The Defendants will turn over the last known address, date of birth, and last four Social Security numbers for every potential class member. (*Id.* at #592). The claims administrator will utilize this information to either confirm or find updated addresses for each potential class member. (*Id.* at #593). From there, the Court anticipates little difficulty in disseminating notice and providing payments to the class. Moreover, as the Court explains further below, the settlement appropriately compensates class members in a pro rata fashion according to their respective harm. *See infra* Part A.4.

The attorneys' fees award does not weigh against the adequacy of class recovery either.[11] The parties agreed that class counsel will limit any attorneys' fee request to a maximum of $405,000, approximately one-third of the common fund. (*Id.* at #594–95). This proportion is routinely awarded for class action settlements within the Sixth Circuit. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2022 WL 4385345, at *2–3 (E.D. Mich. Sept. 22, 2022) (approving a one-third fee out of $700,000 common fund); *In re Nat. Century Fin. Enters., Inc. Inv. Litig.*, No. 2:03-md-

---

[11] As with the potential service awards, the Court will scrutinize the amount of attorneys' fees actually sought as part of the final approval process.

1565, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (approving attorneys' fees of 30% of settlement amount, approximately $120,000). More importantly, the Court retains authority to adjust attorneys' fees as part of the final approval process. So, if the requested fees are too high on the facts here, the Court can address that down the road, meaning that attorneys' fees do not counsel against preliminary approval.

### 4. Equitable Treatment Among Class Members

Finally, the Court must consider whether the proposed settlement agreement treats the class members equitably. Fed. R. Civ. P. 23(e)(2)(D). Relevant considerations include "whether the apportionment of relief among class members takes appropriate account of differences among their claims." *Id.* (advisory committee notes). The Court finds that the settlement treats the class members equitably.

First, the proposed settlement agreement provides a $500 award for each Settlement Class Member. (Doc. 85, #596). If that were the entirety of the award, it might be a problem, as that award treats all class members *equally*, but not necessarily equitably. As described above, though, that is not the end of the story. The proposed agreement also provides an individualized payment (the Hourly Award) based on each individual Settlement Class Member's hours of over-detention (with an enhancement for those Settlement Class Members who were released on their own recognizance once arraigned). (*Id.* at #596–97). This variable award treats class members equitably by differentially compensating them based on their relative time in detention. The proposed agreement further triples the Hourly Award for individuals who were released on their own recognizance when they finally were

19

arraigned. (*Id.* at #597). Presumably, these claimants would have been released almost immediately after being detained, so they suffered an additional harm by being detained at all. (*Id.*).

Perhaps one could argue that the arrangement is inequitable in failing to likewise enhance compensation for those who posted bail immediately after their arraignment. They, too, presumably would have been released shortly after arrest if they had appeared before a judicial officer earlier. But that also requires further assumptions—for example that the individual or their family and friends would have had the requisite money at that earlier time. No such assumptions are needed for individuals who were released on their own recognizance. So notwithstanding this potential shortcoming, the Court will accept the proposed framework as equitable in that regard.

But there's one other thing worth noting here—class representative service awards. While such awards do not *directly* impact the question of equitable treatment (given that the settlement agreement does not stipulate a fixed service award, only a maximum), those awards nonetheless *indirectly* impact the question of equitable treatment. Caddell intends to seek $20,000, and Lawson intends to seek $10,000 in service awards. (Doc. 85, #594). Whether those amounts impact equitable treatment among class members turns on both (1) the average final awards to Class Members (to see what the proposed service award multiple is), and (2) how much work Caddell or Lawson did in pursuing these claims. Both of those are challenging for the Court to determine at this time. As to the former, the settlement agreement does not include

an estimated average payout. And as to the latter, the Court is not certain what effort or expense Caddell or Lawson may have incurred. True, the Named Plaintiffs' "years of active engagement in the litigation process, myriad intrusions into their everyday lives, and courage to stand up to powerful individuals in the community in which they resided, merit further award." (Doc. 84, #543). But it is not clear whether the Named Plaintiffs incurred specific expenses or how they assisted with the litigation, such as whether they attended each of the mediations. Indeed, the Court ordered the parties to submit a revised settlement agreement because the proposed incentive awards were too high ($35,000 for Caddell and $20,000 for Lawson). (Doc. 84-1, #554; 9/29/25 Min. Entry). But the Court does not have sufficient information to weigh the revised incentive awards either.

That said, and as already noted, the Court can address any such concerns as part of setting the actual class representative service awards (if any) at final approval. The proposed settlement agreement is "not conditioned … upon the payment of any Incentive Award or claims payment to any Named Plaintiff." (Doc. 85, #599–600). But the Named Plaintiffs still should be prepared to provide justification when they ultimately seek their service awards.

## B.    The Proposed Notice Plan is Reasonable Under the Circumstances.

Now turn to the adequacy of the notice plan. "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008)

(cleaned up). And the notice must also be "reasonably calculated to reach interested parties" to satisfy due process. *Id.* at 514 (quotation omitted). Moreover, Rule 23(c)(2)(B) dictates that the notice describe: "the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3)." (cleaned up).

After examining the proposed notice here, the Court finds that it satisfies due process requirements.[12] The notice clearly provides a description of the class as:

> Plaintiffs and those individuals subject to a warrantless arrest by City of Fairfield Police Officers from February 1, 2017, until February 28, 2019, and who were held by the Butler County Sheriff's office for more than 48 hours on charges pending in the Fairfield Municipal Court, if held without a post-arrest probable cause determination by a judicial officer and not otherwise subject to lawful detention for reasons unrelated to the warrantless arrest.

(Doc. 84-1, #580). It further clarifies the purpose of the class action and specifically describes the underlying constitutional rights at issue. (*Id.* at #579). Additionally, it explains the common fund that the settlement creates, including how settlement class members will be paid a base amount of $500 and an additional amount for the claimant's hours of over-detention. (*Id.* at #581). The Mailed Notice lists the previous

---

[12] As noted above, *see supra* note 10, the parties did not re-attach the exhibits to the Amended Settlement Agreement. So while the Court treats the Amended Settlement Agreement (Doc. 85) as the operative agreement, the Court will review the exhibits attached to the original settlement agreement (Doc. 84-1). The Mailed Notice is Exhibit C to the original agreement. (*Id.* at #579–86).

incentive awards though, so the Court directs the parties to revise the notice to more accurately state the proposed incentive awards.

It further instructs the class members on how to submit a claim form, opt out, or object, as well as the consequences for each choice. (*Id.* at #582–84). The proposed notice also directs potential class members to the website, the toll-free number, the class administrator, or class counsel if they have questions. (*Id.* at #582, 585).

The parties also propose a short-form notice to be published. (Doc. 84-1, #587; Doc. 85, #593). The short-form notice similarly provides the class definition, the basis of the claims and defenses, and the individual's rights to object or opt out of the class. (Doc. 84-1, #587). As noted earlier, however, the agreement does not state a method of publication for this short-form notice. But the parties have since informed the Court in an email that it will be published once in the Hamilton Journal News and kept on the newspaper's website until the end of the claims period.

All told, the mailed notice is easy to understand and conforms to *Fidel*'s requirements. And the notice plan, which initially relies on mail notice, as well as the published notice, supplemented with a website and telephone number, is reasonably calculated to reach the class members and takes the same approach as many other notice plans. *See, e.g.*, *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-cv-776, 2024 WL 6076646, at *7–8 (S.D. Ohio Sep. 10, 2024); *Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, slip op. at 30–31 (S.D. Ohio June 18, 2024) (located at docket entry 86).

The Court therefore generally approves the notice plan, once the parties update the incentive award figures for the Named Plaintiffs. Subject to that revision, Defendants will provide the contact information, including last known addresses, dates of birth, and the last four Social Security numbers, for all potential class members to Rust Consulting. (Doc. 85, #592). By January 11, 2026, (30 days after preliminary approval), Rust Consulting will send the Mailed Notice by first class U.S. mail to all identified potential class members. (*Id.*). During that same period, Rust Consulting will coordinate the Published Notice, establish the toll-free telephone number, and publish the website. (*Id.* at #593). That website will remain active for at least 180 days and contain the Settlement Agreement, its exhibits, the Mailed Notice, the Published Notice, the Claim Form, and the Court's Preliminary Approval Order. (*Id.*). Class members shall have 60 days from the Mailed Notice date (at the latest March 12, 2026) to submit a claim form, opt out, or object to the settlement agreement. (*Id.*). All class members who do not timely submit a valid opt-out request will be bound by any final judgment this Court enters in this case and thereby will be enjoined from bringing or prosecuting any action relating to the claims released under the settlement agreement. (Doc. 84-1, #584 (Mailed Notice explaining release); Doc. 85, #603 (release)).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Preliminary Approval of Settlement Agreement (Doc. 84). The Court further:

- **PRELIMINARILY APPROVES** the proposed settlement agreement, (*see generally* Doc. 85);

- **APPROVES** distribution of notice (once revised and approved by the Court) in accordance with the notice plan as described in the settlement agreement, (Doc. 84-1, #579–85),

- **APPROVES** the use of the proposed claim form, (*id.* at #586);

- **PROVISIONALLY APPOINTS** Rust Consulting, Inc. as the claims administrator;

- **ORDERS** that class members shall have 60 days from when Rust Consulting, Inc. sends out notice to opt out of the class, to object to the proposed settlement, and to submit settlement claims;

- **ORDERS** that any class members who do not timely opt out of the settlement in the manner provided in the proposed settlement agreement will be bound by the terms of the settlement upon final approval of the same; and

- **SCHEDULES** the final approval hearing for June 11, 2026, at 11:00 a.m. in Courtroom 805.

  **SO ORDERED.**

December 12, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**